J. D. BRIGGS, Appellant, v. EMMA B. COFFIN, Administratrix, *et al.*

Reconveyance of Property Deeded by Client to Attorney with Fraudulent Intent. Where a client freely conveys property to his attorney with intent thereby to cheat creditors, an agreement to reconvey when the necessity which inspired the transfer should cease, will not be enforced.

Practice in Supreme Court. An additional abstract will not be stricken for being filed too late, especially where submission is not delayed.

SAME. The point that parts of an additional abstract are unwarranted by the record, should be made by a printed denial in the nature of a reply, which may, if necessary, contain a further abstract of the record in explanation of the denial, and not by motion.

Practice in District Court. Whether a pleading which is filed later than ordered by the court and filed without leave, shall stand, and whether such delay is well excused, is largely in the discretion of the court.

*Appeal from Mitchell District Court.*—HON. JOHN C. SHERWIN, Judge.

WEDNESDAY, MAY 23, 1894.

ACTION in equity to set aside certain conveyances of real and personal property, to recover the property, and for general equitable relief. There was a hearing on the merits, and a judgment for the defendants. The plaintiff appeals.—*Affirmed.*

*Reiniger & Lloyd* for appellant.

*G. E. Marsh* for appellee Emma B. Coffin.

*G. E. Marsh* and *Eaton & Clyde* for appellee Eaton.

*Eaton & Clyde* for appellees A. and M. Schulte.

ROBINSON, J.—One George Briggs died in Mitchell county, about the year 1882, leaving an estate, consisting of both real and personal property. Nearly all of the estate was left to four beneficiaries, in shares as follows: To C. M. Blackman, one half; to Mrs. Hester Ann Wadsworth, one fourth; and to Adelaide C. and Emma A. Briggs, one fourth. The share taken by the persons last named, was given by the will to their father, Daniel M. Briggs, but he died before the death of the testator, who was his brother. Mrs. Wadsworth and the Misses Briggs were nonresidents of this state. Mrs. Wadsworth was executrix and C. M. Blackman was executor of the will, but it appears that they acted to some extent separately, employing different attorneys and making separate reports. About the year 1883, the plaintiff, who was a nephew of George Briggs, and then a resident of Missouri or New York, came to this state to act as agent and attorney in fact of Mrs. Wadsworth, and thereafter, and until about the year 1888, she acted, in managing the estate, through him. It is not made clear what he did, but it is stated that the part of the estate he managed was of the value of from forty-five thousand dollars to fifty thousand dollars, and it appears that he took charge of the shares of Mrs. Wadsworth and the Misses Briggs. In December, 1887, Adelaide C. Briggs and her sister, then Emma A. Merville, conveyed to the plaintiff the interests acquired by them through the will, and a few weeks later, Mrs. Wadsworth executed to the plaintiff a conveyance of her interest in the estate. A short time thereafter she became dissatisfied, and the plaintiff relinquished to her the interest she had conveyed to him, and commenced an action against her to recover twenty thousand dollars, alleged to be due him for money advanced and services rendered by him for her in the settlement of the estate. Adelaide C. Briggs also became dissatisfied with what she had done, and

demanded that the interest she had conveyed be surrendered to her, but her demand was refused.   In January, 1889, the plaintiff, then a resident of Brooklyn, New York, came to this state.   Actions had been commenced against him on account of his management of the estate, and others were commenced after his arrival. While in this state, he arranged for a conveyance to his attorney, F. F. Coffin, of his entire interest in the estate, including lands, notes, and judgments, and the conveyance was afterward completed.   In March, 1889, Mrs. Wadsworth and Adelaide C. Briggs, then Mrs. Day, conveyed to the defendant Willard L. Eaton their interest in the land of the estate.   In September, 1889, Coffin and Eaton made a division of the interests in land which they had acquired as stated.   Deeds necessary to effect the division were made by each, Eaton executing to the defendant Emma B. Coffin, who was the wife of F. F. Coffin, a conveyance for some of the land.

In November, 1886, C. M. Blackman, as an individual, assigned his interest in certain notes and mortgages which had been given by the defendants A. and M. Schulte, and which belonged to the estate, to the plaintiff and Coffin.   On the same day, another assignment of the same instruments, purporting to be executed by Blackman as executor and by Mrs. Wadsworth as executrix by the plaintiff as her attorney in fact, was made to the plaintiff and defendant Coffin. The notes and mortgages thus transferred were left for collection with Coffin, who was an attorney, and who agreed to obtain judgment on them, and that plaintiff should have and own one half of the judgment without expense for attorney's fees.   The plaintiff alleges that his conveyance of property to Coffin was the result of the joint efforts of Coffin and Eaton to defraud him; that Coffin was his legal advisor in whom he had great confidence; that Coffin advised him to make the conveyances, in order to stop litigation and expedite the

settlement of all matters in dispute between the litigants,—and that the conveyances were made upon the advice so given, and with reliance upon the promise of Coffin to convey the property back to him when the litigation and matters in dispute should be adjusted; that the conveyance of the property which Coffin has made was without authority; that Eaton took the conveyance to him from Coffin with full knowledge of the rights of plaintiff; that the conveyance of land to Mrs. Coffin was made without consideration, and to defraud the plaintiff; that one of the two Schulte mortgages in question was wrongfully satisfied by Coffin, and a certain judgment against one Keating was wrongfully assigned to the defendant, M. Schulte. The plaintiff asks that all the land which he claims be conveyed to him by the defendants, in whom the title now appears to be vested; that the transfer made by him to Coffin of personal perperty, including his claim against Mrs. Wadsworth, be decreed to be void; that the satisfaction of the satisfied Schulte mortgage be set aside; that an account be taken of the amount due him on the two Schulte mortgages; and that he have a decree for the amount and for the foreclosure of the mortgages; and that he have general equitable relief. F. F. Coffin was made defendant in the action, but died before the final hearing, and Mrs. Coffin, who is the administratrix of his estate, has been substituted for him. The defendant Eaton denies all charges of fraud or knowledge of fraud on his part, and all right of plaintiff to recover against him. Mrs. Coffin, in her own right, and as administratrix, denies all liability charged by the plaintiff, and alleges that the conveyances made to her husband were made by plaintiff voluntarily, with the intention and purpose of defrauding his creditors, and that he is now estopped to assert title to the property conveyed. The Schultes allege that their notes have been fully paid and surrendered

to them, and that their mortgages are satisfied. The district court dismissed the petition of plaintiff, and rendered judgment in favor of the defendants, for costs.

I.   The appellant has filed in this court a motion to strike the additional abstract of appellees from the files, because a copy thereof was not served on counsel for appellant within ten days after a copy of the appellant's abstract was served. Section 19 of the rules of practice in this court requires the additional abstract to be served within ten days after the service of the abstract, but it is not our practice to strike from the files an additional abstract when served after the expiration of the ten days, especially when, as in this case, the final submission of the cause is not delayed by permitting the additional abstract to remain on file. The rules of this court are designed to secure the submission of causes on their merits in an orderly manner, and as speedily as is practicable. When it seems necessary, we shall not hesitate to impose suitable penalties for their violation, but we are always unwilling to take any action which will tend to prevent the full submission of a cause upon a record which is satisfactory to all parties in interest. The appellant does not appear to have been prejudiced by the delay in serving the additional abstract, and it will be permitted to remain on file.

II.   The appellant also asks, by motion, to have certain portions of the additional abstract stricken out, on the ground that they are not justified by the record. It is not the practice to present such questions by motion to strike, but by a formal printed denial or statement, in the nature of a reply, which may, if necessary, contain a further abstract of the record in explanation of the denial. It is proper to state that, although the motion of appellant will be overruled, we do not find it necessary to give any weight to the portions of the additional abstract to which the motion is directed.

III.   This action was commenced on the twenty-seventh day of September, 1889.   On the nineteenth day of November, that being the second day of the term, the defendants filed a motion to require the plaintiff to give security for costs.   Six days later a cost bond was filed and approved.   On the twenty-sixth day of November, the petition was assailed by motion, and was amended by the plaintiff.   On the next day, the defendants Coffin and his wife, Eaton and the Schultes were ordered to file answers within twenty days, with the privilege of withdrawing them at the next term and filing demurrers.   On the twenty-seventh day of December, answers not having been filed, the plaintiff filed a motion asking that the defendants be adjudged in default for failure to answer.   On the next day, the answer of Eaton was filed, and on the ninth day of January, 1890, the Schultes answered. On the second day of the next February term of court, the cause was continued without further proceeding. On the twenty-third day of April, that being the fifteenth day of the April term, Mrs. Coffin, as administratrix, was substituted as defendant for F. F. Coffin, deceased, and the cause was continued without other action.   On the twenty-sixth day of July, the answers of Mrs. Coffin, in her own right and as administratrix, were filed.   On the second day of the September term, the plaintiff filed a motion to strike the answers of Mrs. Coffin from the files, because they were not filed within the time fixed by the court, and no excuse for the delay was shown; and on the same day the cause was continued.

It was again continued at the November term.   In February, 1891, the Schultes filed a verified statement in the nature of an excuse for the delay in filing their answer.   The motion to strike was waived as to the answer of Eaton, and, without other action on the motions, the hearing of the cause was then commenced

on evidence taken before that time. The plaintiff had begun taking depositions on the nineteenth day of August, 1890, and the taking of depositions for the defendants was commenced on the twenty-eighth day of October, 1890. The reading of the evidence to the court was concluded on the fourteenth day of February, 1891. Time was given for the submission of written arguments, and the cause was taken under advisement until the next term. On the same day, a showing against striking the answers of Mrs. Coffin was filed. On the twenty-fourth day of February the plaintiff filed objections to the showing to excuse delay in filing answer made by the Schultes. On the second day of March, Mrs. Coffin filed amendments. to her answers. At the April term, the cause was continued, and at the September term, it was agreed that judgment might be entered in vacation, and the cause was continued; and on the seventh day of March, 1892, the motions of plaintiff for default and to strike answers were overruled, and the judgment was rendered.

We have set out the proceedings had at considerable length, for the reason that the appellant insists with much earnestness that the motions should have been sustained. It is true that the answers were filed after the time given by the court, and without leave. They were not accompanied by a formal request for permission to file, nor by an affidavit of merits. It appears, however, that the answer of the Schultes was prepared and verified within the time given by the court, but, through oversight on the part of a clerk, was not filed until about three. weeks after the time given for that purpose. Mrs. Coffin had relied upon her husband to prepare the necessary answers, but it appears that his physical and mental condition was such at the time that no advantage of his failure to prepare and file an answer for himself should be

taken. Mrs. Coffin does not show that she exercised the utmost diligence possible, and that may be true of the Schultes. But all the answers, excepting the amendments filed by Mrs. Coffin, which were not assailed, were filed in time to give the plaintiff opportunity to submit evidence in regard to all issues presented. He did not urge his motions, but permitted numerous terms of court to pass and much evidence to be taken without insisting upon a hearing of his motions. So far as we are able to judge, he has offered all the evidence which he could have had if his motions had been promptly overruled when filed. His failure to demand a ruling on his motions within a reasonable time may well be given the effect of a waiver of them. It is very common, if not the general practice, in this state, to permit the filing of pleadings and amendments without leave, and then, if they are improperly filed, to assail them by motion to strike. When a pleading is filed after the time fixed by the order of the court, a showing of merits and in excuse of the delay may be required; but whether it should be or not when the default has not been entered, is largely to be determined by the court, in the exercise of a sound legal discretion. *McQuade v. Railway Co.*, 78 Iowa, 689, 42 N. W. Rep. 520, and 43 N. W. Rep. 615. No abuse of that discretion in this case is shown. There was a full submission on the merits, and justice did not demand that the motions of appellant be sustained. The action of the district court in overruling them will not be disturbed.

IV. When the plaintiff came to Iowa to take charge of the interests of Mrs. Wadsworth and of the Misses Briggs, he employed Coffin as an attorney, and the relations of attorney and client continued between them until after the conveyances in question were made. The principals of plaintiff did not seem to have much knowledge of the condition of the estate, and the

conveyances they finally made to him of their interest in it, were for but a small part of the real value of the interests actually conveyed. After they had executed the conveyances, they became much dissatisfied with what they had done and with his management of the estate. After he had reconveyed to Mrs. Wadsworth the interest she had transferred to him, he commenced an action against her as stated. She had filed an answer in which she had charged him with gross deceit and fraud in the management of her interests, and alleged that he had appropriated to his own use a large amount of the property of the estate. She asked for an accounting and for other relief. Adelaide C. Briggs had commenced an action against him in which she alleged that he had obtained the conveyance from herself and her sister by means of fraud, misrepresentation and deceit, without consideration, and that he had collected rents and profits which belonged to her to the amount of four thousand dollars. She asked that her conveyance to him be set aside, and that he be required to account for the rents and profits. Eaton was the attorney for Mrs. Wadsworth and Miss Briggs in those actions.

The plaintiff went to Mitchell county in January, 1889, to attend to those cases, and perhaps for other purposes. Soon after his arrival there, Eaton served him with notices of other actions growing out of his connection with the Briggs estate. Mrs. Wadsworth and Adelaide C. Briggs were the plaintiffs in those actions. After the notices were served, the plaintiff obtained an interview with Eaton, and endeavored to effect a settlement of the claims he represented, but failed. Mr. Coffin then talked with Eaton in the interest of the plaintiff, and, as a result, a proposition was submitted to Coffin, of which the following is a copy: "To F. F. Coffin: If you purchase all interest of J. D. Briggs in and to all the property in Iowa and Dakota,

personal and real, formerly owned by the Briggs estate, except cash already received by said J. D. Briggs, and evidence of purchase appears recorded in the proper office, then all claims for personal judgment against said J. D. Briggs affecting his private property will be dismissed and withdrawn, and all suits are to be dropped, except the suit for recovery of title, and to set aside conveyance and case of Mrs. Wadsworth now pending. February 5, 1889. W. L. Eaton, Att'y." The next day, the plaintiff entered into an agreement with Coffin for the transfer of property to him, which was afterward made, as we have stated. As a part of the transaction, Coffin gave to plaintiff an instrument in writing, which contained the following:

"Whereas, J. D. Briggs has this sixth day of February, A. D. 1889, executed to F. F. Coffin certain deeds to lands in Cerro Gordo and Mitchell counties, in the state of Iowa, and certain lands in Coddington, Hamlin, and Grant counties, territory of Dakota (for the description of said lands see deeds); and, whereas, said J. D. Briggs has, by bill of sale, conveyed to me certain claims, among others these, viz.:   * * *; and, whereas, certain suits are now pending in the district court of Iowa, in and for Mitchell county, and certain other suits are threatened, which suits pending and suits threatened affect all foregoing property, its ownership and possession: Therefore these foregoing conveyances are made to the said F. F. Coffin for the purpose of litigating the suits now pending, and to prevent the bringing of other actions, and to defeat any recovery on any said cases, and to defeat, delay, retard, and prevent the enforcement of any sum or sums ever recovered as a result of said litigation; and F. F. Coffin agrees to prosecute said claims and carry out the above and foregoing agreement, and, when said cases, said difficulties, and all matters are adjusted between the parties interested, then said Coffin agrees to

redeed the property to said J. D. Briggs, and reconvey to said Briggs all said personal property. Dated February 6, 1889. F. F. Coffin." The instrument thus given by Coffin, and accepted by the plaintiff, shows clearly that the transaction was not only fraudulent, but that it was criminal. Code, section 4074. Ordinarily, as between the parties to a conveyance made to defraud creditors, the law will leave the title to the property conveyed where it finds it; but it is said that, when a sale is made by a person to his attorney, the presumption of law is that it was made in consequence of the undue influence of the attorney, and that the burden is on him to rebut that presumption, and that he must do so by showing beyond all doubt that the transaction was a free and fair one on the part of his client. It is also said that the facts shown in this case support the presumption of the law, and that Eaton was active in causing the conveyances in question to be made, and that, if he were innocent of a wrongful intent, he knew of the relation which existed between plaintiff and Coffin, and is chargeable with constructive knowledge of the facts involved in the transaction.

We think the evidence fails to disclose any wrongful act or intent on the part of Eaton. When he submitted to Coffin the proposition we have set out, he had no interest whatever in the Briggs estate, excepting that of an attorney representing clients; and what he did, appears to have been done in good faith, and for the interest of his clients. He did not file petitions in the cases in which he caused original notices to be served upon the plaintiff, it is true; but, before the time fixed for filing them had arrived, a settlement had been made with his clients and Coffin, and there was no occasion to file the petitions. Nothing which Eaton did is shown to have been done to influence the plaintiff to enter into a fraudulent agreement with Coffin, and Eaton had no knowledge of the nature of the agree-

ment made until after he had acquired an interest in
the estate and had effected a settlement with Coffin.
The conveyance he made to Mrs. Coffin was by direc-
tion of Coffin, to carry out an agreement he had made
with his wife some time before, to provide her with
means of support. If there is any liability on the part
of Eaton, it is due to the fact that, when he accepted
the conveyances from Coffin, he knew that Coffin had
obtained the lands so conveyed from a client while the
relation of attorney and client existed. Much of the
testimony given in this case with respect to transactions
with Coffin is objected to as incompetent, under section
3639 of the Code; but, if the testimony of plaintiff in
regard to his conversation and agreement with Coffin
be considered, we think the entire evidence fails to
show any sufficient ground upon which to set aside the
conveyances of plaintiff to Coffin. The latter may have
represented that it would be for the interest of plaintiff
to make them, and it is shown that he agreed to make
reconveyances, and that in September, 1889, the plain-
tiff demanded of him such reconveyances, and that he
refused to make them. The share of Coffin in the
transactions in question can not be defended upon
any ground; but the evidence satisfies us that
the plaintiff was a shrewd and unscrupulous
man, of mature age and large business experience. He
was not a mere tool in the hands of Coffin, but was
conscious that his management of the Briggs estate
would not bear investigation. The record of what he
did as agent for Mrs. Wadsworth and the Misses Briggs
is not very full, but several reports which he prepared
and filed with the court records of the estate, and other
evidence, indicate gross mismanagement, and an effort
on his part to absorb the larger part of the estate for his
own benefit, by means of excessive charges and in other
ways. He appears to have feared not only civil actions,
but criminal prosecutions, and was anxious to do what

he could to stop litigation and investigation, and to place the property beyond the reach of his creditors, especially the rightful owners of the interests he had mismanaged.    It is said the defendants claim title through him; that their title depends upon his; and that they can not question the means by which he acquired it.    That may be true for some purposes, but we can properly inquire into his management of the estate, in order to ascertain and more fully understand the motives which prompted the conveyances to Coffin. We conclude that the making of the conveyances was his free act; that his intentions in making them were so fraudulent, and that his entire course of dealing with the property conveyed and the persons interested in it was so corrupt, that he has no standing and can obtain no relief in a court of equity.

V.    A large part of what we have already said is applicable to the claims of the plaintiff in regard to the Schulte notes and mortgages.    It may be said, further, that the Schultes claim that they are fully paid. It is clear that they are partially paid.    Some of the payments upon which the Schultes rely, appear to be of doubtful merit, but their testimony in regard to them is not overcome by the plaintiff, and they are entitled to the presumption which arises from the pos- session of the notes.    They were included in the trans- fer made by plaintiff to Coffin, and we are of the opin- ion that the plaintiff has not shown himself entitled to recover anything on account of them.    The conclusions announced dispose of the material questions in the case. The judgment of the district court is AFFIRMED.