DARWIN SEVERSON, appellant, v. WILLIAM F. SUEPPEL, Commissioner, State of Iowa Department of Public Safety, appellee.

No. 52529.

(Reported in 152 N.W.2d 281)

Strand & Kiener, of Decorah, for appellant.

Richard C. Turner, Attorney General, and David A. Elderkin, Assistant Attorney General, for appellee.

MOORE, J.—This is an appeal by plaintiff Darwin Severson, from district court judgment affirming an order of State Public Safety Commissioner which revoked for 120 days plaintiff's driver's license because of his refusal to submit to a chemical test under the Chemical Test for Intoxicated Drivers Law, frequently called the Implied Consent Law, now chapter 321B, Code 1966. We affirm.

About 1:30 a.m. June 19, 1965, Decorah policemen, Al Etteldorf and Alvin Thune, observed a 1958 black sedan ap-

proaching them from the opposite direction on Water Street in Decorah. Its headlights were not on. They immediately turned around and began following it. It first ran a stop sign on River Street and then veered to the left side of the highway forcing an oncoming car to pull to the curb. The lights of the black sedan then came on for the first time and a stop made as it approached the stop sign at Bridge Street. When the vehicle turned onto Bridge Street and proceeded to cross Leif Erickson Bridge it was on the left side of the bridgeway until approximately half across the bridge when it swerved sharply back to the right, nearly striking the bridge railing. It then moved back and forth across the highway. When the vehicle began going to the left side on a hill the officers turned on their red light and attempted to stop it but were unable to do so for some distance. Use of the siren was necessary.

As the officers approached the black sedan plaintiff got out. He was unsteady on his feet. When questioned his answers were somewhat incoherent and slurred.

Etteldorf testified it was obvious to him at that time plaintiff, from his appearance, his speech, his general condition and smell of his breath, had been drinking and that he immediately told plaintiff he was under arrest for drunken driving, operating a motor vehicle while intoxicated.

Plaintiff was then taken to the Decorah City Hall where Etteldorf called Winneshiek County Deputy Sheriff, Mel Lee, to handle the implied consent procedure as the two Decorah officers were not under civil service and therefore not peace officers within the definition thereof set out in Code section 321B.2.

Lee testified that upon his arrival at 2 a.m. he talked to the two police officers to get their stories. He observed plaintiff's condition. He also talked to Doctor Dines who was present to physically give the tests.

Lee testified he told plaintiff he was under arrest and asked him to take a blood test which plaintiff refused. He also refused to take a urine test.

June 30, 1965, plaintiff's license was revoked by defendant for 120 days under the provisions of Code section 321B.7. Plaintiff then requested a hearing to review the revocation order as

provided for by section 321B.8. Following hearing before defendant's authorized agent the revocation was sustained. Plaintiff then appealed to the district court and pursuant to section 321B.9 a certified copy of the testimony and all other proceedings was filed in the district court where the matter was heard de novo.

On this appeal from the trial court's adverse ruling plaintiff makes several contentions.

I. Plaintiff first argues he was not placed under arrest by a peace officer as required by Code section 321B.2 which provides: "Definitions. As used in this chapter the words 'peace officer' mean: 1. Members of the highway patrol. 2. Police officers under civil service as provided in chapter 365. 3. Sheriffs. 4. Regular deputy sheriffs who have had formal police training."

Plaintiff before the hearing officer, the trial court and here takes the position Lee was not a regular deputy sheriff with formal police training as required by subsection 4.

Lee testified he had worked as deputy under the Winneshiek County Sheriff for three years and had attended State Sheriffs School each winter. The evidence is undisputed he was a regular deputy sheriff. There is no statutory distinction between regular deputies with or without formal police training elsewhere in the Code.

■ The words "formal police training" are not defined by the Act. These words therefore must be given their normal and natural meaning.

Webster's Third New International Dictionary defines "formal" as: "following or according with established form, custom or rule: not deviating from what is usual or generally acceptable: conventional." "Training" is therein defined as: "drill or discipline by which powers of the mind or body are developed: education." "Police" refers to maintaining law and order.

■ We take judicial notice no police academy was being maintained in this state during the time pertinent herein. The customary conventional and usual training for regular deputy sheriffs was on the job training under the sheriff and perhaps some attendance at the State Sheriffs School.

Lee's actions after being called by the two policemen clearly showed he had knowledge of and was trained in that phase of law enforcement involving the Implied Consent Law.

 In interpreting a statute we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. Monroe Com. Sch. Dist v. Marion County Bd., 251 Iowa 992, 998, 103 N.W.2d 746, 749, 750, and citations. It is obvious the purpose of the Implied Consent Law is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor.

 We hold the record establishes Lee was a regular deputy sheriff who had sufficient formal police training to meet the requirements of Code section 321B.2, subsection 4.

 II. Plaintiff also argues Lee had no reasonable grounds to arrest him and in fact he was not arrested by Lee.

Plaintiff testified he was not told by the police officers or Lee that he was under arrest or the cause of his arrest.

Code section 755.4 authorizes a peace officer to make an arrest without a warrant. "* * * 3. Where he has reasonable ground for believing that an indictable public offense has been committed and has reasonable ground for believing that the person to be arrested has committed it."

After talking with the two police officers, the doctor, and observing plaintiff, Lee had reasonable grounds for believing plaintiff had committed the indictable public offense of operating a motor vehicle while intoxicated.

III. Section 321B.3 provides the chemical tests for sobriety "* * * shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle upon a public highway of this state while in an intoxicated condition, and only after the peace officer has placed such person under arrest for the offense of operating a motor vehicle while in an intoxicated condition."

Lee testified he told plaintiff he was under arrest prior to asking him to submit to a test for sobriety.

Defendant's official records certified to the trial court include an affidavit by Lee that he had at 2:25 a.m. June 19, 1965, placed Darwin Severson under arrest for operating a motor vehicle while intoxicated and had advised him refusal to take a blood or urine test would result in revocation of his driving privilege.

Defendant's official record includes this (exhibit 11): "Request for Blood Test

"*To Darwin Severson* *R.R.3, Decorah, Iowa* *7-21-22*

 Name of Accused Address Birthdate

"DATE: June 19, 1965 TIME: 2:25 AM PLACE: Decorah Police Dept.

"Having had reasonable cause to believe that you operated a motor vehicle upon a public highway of this State while intoxicated and having arrested you for the offense of operating a motor vehicle while intoxicated, I hereby request that a specimen of your blood be withdrawn for chemical test or tests thereof for the purpose of determining the alcoholic content of your blood. Refusal to submit to the withdrawal of your blood or other specified substances for chemical test or tests thereof, for the purpose of determining the alcoholic content of your blood will result in revocation of your license or privilege to operate a motor vehicle.

/s/ Mel Lee, Dep. Sheriff of Winn. County

(Name of Officer)

*Deputy Sheriff of Winn. Co. Iowa*

(Official Title)

"I refuse to allow a specimen of my blood to be withdrawn.

"/s/ Darwin Severson

(Name of Accused)"

The request was served on plaintiff by Lee. Plaintiff signed the refusal on advice of and in the presence of his attorney at the time and place stated.

We conclude plaintiff was arrested by Lee and advised of the cause thereof as required by section 321B.3.

IV. The record before the district court shows plaintiff on November 16, 1965, was found not guilty of the charge of operating a motor vehicle while intoxicated. It involved plain-

tiff's arrest as above described. Relying heavily on Colling v. Hjelle, N. D., 125 N.W.2d 453, and McDonald v. Ferguson, N. D., 129 N.W.2d 348, plaintiff argues the acquittal establishes his arrest was unlawful. These cases are readily distinguishable from the case at bar. The North Dakota statute does not allow an arrest by a police officer on reasonable cause for any offense less than a felony. Our statute authorizes such an arrest for indictable offenses which include operating a motor vehicle while intoxicated. The difference in the two statutes is clearly pointed out and discussed in 14 Drake Law Review 73.

Proceedings under the Implied Consent Law, chapter 321B, Code 1966, are administrative, not a criminal prosecution for operating a motor vehicle under Code section 321.281. The same motor vehicle operation may give rise to two separate and distinct proceedings, one a civil and administrative licensing procedure, the other a criminal action. Gottschalk v. Sueppel, 258 Iowa 1173, 1179, 140 N.W.2d 866, 870, and citations.

Each action proceeds independently of the other. The outcome of one action is of no consequence to the other. Acquittal of the criminal charge of operating a motor vehicle while intoxicated did not preclude defendant from revoking plaintiff's driver's license. Gottschalk v. Sueppel, supra; Marbut v. Motor Vehicle Dept. of Highway Comm., 194 Kan. 620, 400 P.2d 982; Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75, 88 A. L. R. 2d 1055; Anderson v. Macduff, 208 Misc. 271, 143 N. Y. S.2d 257; State v. Muzzy, 124 Vt. 222, 202 A.2d 267; Annotation, 88 A. L. R.2d 1064.

V. Defendant was served on August 5, 1965, with plaintiff's notice of appeal to district court. Section 321B.9 provides the commissioner shall within fifteen days after such notice file with the district court clerk a certified transcript of the testimony and all other proceedings before the hearing officer. Defendant did not file his answer and make such certification until September 7, 1965. Plaintiff contends the trial court erred in overruling his motion for default which he filed September 1. The trial court overruled plaintiff's motion for default on September 16.

■ ■ We have consistently held the question of allowing default is largely within the discretion of the trial court. The policy of the law is to allow trial of actions on their merits. Walker v. Hutchinson, 50 Iowa 364; Jones v. Merrill, 73 Iowa 234, 34 N.W. 829; Briggs v. Coffin, 91 Iowa 329, 59 N.W. 259.

In Jackson v. Jones, 231 Iowa 106, 115, 300 N.W. 668, 673, we say: "It is generally the holding of courts that trials are looked upon with favor and defaults should be avoided, if possible."

■ Plaintiff was given a full review of the commissioner's ruling. We find no reversible error in the trial court's overruling of the motion for default. Disposition of this controversy in such a summary manner would be contrary to the purpose and intent of chapter 321B.

■ VI. Plaintiff's last contention is the testimony of a banker given in the trial of the criminal case that he talked to plaintiff on the telephone at 2:30 a.m. June 19, 1965, regarding financial arrangements for posting a bail bond and that plaintiff's voice sounded normal to him, should have been received. The record made before the trial court regarding this offer, which was made in bulk, and the objections made thereto is unclear.

We need not decide whether the court erred in sustaining defendant's objections to this evidence. Assuming arguendo it should have been received it would be of little value and not be such an error to require a reversal.

We agree with the order and judgment of the trial court. We were advised during oral argument plaintiff has retained his license during this appeal. The revocation order should now be enforced.—Affirmed.

All JUSTICES concur except BECKER, J., who dissents.