**STATE of Iowa, Appellee,**

v.

**Dena Mae HILL, Appellant.**

**No. 95–1995.**

Supreme Court of Iowa.

Nov. 20, 1996.

Martha M. McMinn, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, and Mark J. Schouten, County Attorney, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

LAVORATO, Justice.

The defendant, Dena Mae Hill, appeals from a district court order overruling her motion to dismiss two criminal charges against her. The charges stem from her alleged attempt to evade the motor vehicle tax. Hill contends the civil penalty she paid for allegedly attempting to evade the tax constitutes punishment for double jeopardy purposes. She therefore asserts the State cannot now prosecute the criminal charges against her because to do so violates her constitutional right against double jeopardy.

The district court disagreed and so do we. We affirm.

## I. Background Facts.

In May 1994 Hill purchased a 1992 Chevrolet Beretta from Terry Schulte Automotive of Sioux Falls, South Dakota. She paid $9275 for the car. But when she applied for an Iowa title at the county treasurer's office in Sioux County, Iowa, Hill reported the purchase price as $9995 less a $9745 trade-in. As a result, Hill paid only $12.50 in use tax on a reported purchase of $250 ($9995 less $9745).

Hill's deception came to light when she bragged to co-workers that she had evaded the use tax. An investigator for the State reviewed the documentation in question at the treasurer's office in Sioux County. Thereafter, the investigator contacted the dealership where Hill purchased the car and learned the true facts.

The investigator then contacted Hill, took a statement from her, photographed the vehicle in question, and submitted a report to the Sioux County Attorney. The Iowa Department of Revenue (IDOR) audited the transaction and eventually determined that Hill should have paid $462.50 in use tax. The $462.50 was reduced to $450 because of a credit for the $12.50 in use tax Hill had already paid.

## II. Background Proceedings.

The State filed a two-count trial information against Hill. Count I alleged that she attempted to evade "a motor vehicle use tax on the payment of ninety percent of the tax" in violation of Iowa Code sections 423.2 and 423.18(2) (1993).

Count II alleged that Hill "did unlawfully and willfully make a false statement in regard to the purchase price of a vehicle subject to taxation in violation of Iowa Code sections 423.26 and 714.12."

Hill eventually paid $824.85 to the State to cover the unpaid tax ($450), civil penalty ($337.50), and interest ($37.35). Hill made the payment after the State filed the criminal charges.

Hill moved to dismiss the criminal charges. She alleged in her motion that the charges violated her protection against double jeopardy under "the Double Jeopardy Clauses of the United States Constitution."

Relying on *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the State asserted the civil penalty was not overwhelmingly disproportionate to the damages Hill caused to the State. For that reason, the State argued, the penalty did not constitute punishment for double jeopardy purposes. The State also asserted the penalty bore a rational relation to a nonpunishment purpose and therefore should not be treated as punishment.

The district court heard Hill's motion. At the hearing, the individual who investigated the matter testified about (1) the number of hours he spent investigating the case, (2) his hourly wage, and (3) the other expenses the State paid. The district court found that the civil penalty was not overwhelmingly disproportionate to the costs the State incurred in investigating the matter and therefore bore a rational relationship to those costs. For these reasons, the court concluded the civil penalty Hill paid did not amount to punishment for double jeopardy purposes and overruled her motion to dismiss.

### III. *The Issues.*

Hill raises three arguments to support her contention that the civil penalty assessed against her constitutes punishment for double jeopardy purposes. First, she argues that a civil sanction is "punishment" for double jeopardy purposes unless the statute mandating the sanction "actually and intentionally" makes the sanction proportional to the State's loss. If that relationship exists by mere chance or coincidence, the resulting accidental relationship is not enough to prevent the sanction from constituting punishment. Iowa Code sections 423.18(1) and 423.27, which impose the civil penalty here, do not contain language making the penalty imposed related to any actual loss suffered by the State.

Second, Hill argues that unless the penalty imposed serves *solely* a remedial purpose, the sanction is punishment for double jeopardy purposes.

Last, Hill argues a civil penalty is punishment if (1) the penalty is conditioned on the commission of a crime and (2) the tax is collected only after the defendant is arrested for the underlying offense. Such factors, she says, demonstrate a punitive intent in the statute. Hill contends both factors are present with respect to the penalty imposed here.

Hill also asserts a punitive intent underlies the civil penalty imposed against her for several other reasons. Section 423.18—one of the provisions dealing with the penalty—is found in the same section as the criminal penalties established in Iowa Code section 423.18(2).

In addition, the penalty imposed for noncriminal failure to file correct returns or pay the correct amount of tax is only seven and one-half percent; the penalty for willful failure to do so is seventy-five percent. This disparity is proof of intent to punish, Hill argues, in the absence of evidence showing that the State incurs greater costs in detecting and assessing willful failures to file accurate returns or pay the tax owed.

■ Because Hill raises a constitutional issue, our review is de novo. *State v. Lewis,* 514 N.W.2d 63, 68 (Iowa 1994).

■ The Double Jeopardy Clause provides that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Fifth Amendment guarantee against double jeopardy is enforceable against the states through the Fourteenth Amendment to the Federal Constitution. *Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707, 711 (1969). The Double Jeopardy Clause prohibits more than one "punishment" for the same offense. *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556, 567 (1993) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969)). If we deem the penalty in this case to be punishment for double jeopardy purposes, the prosecution of the criminal charges would of course subject Hill to more than one punishment for the same offense.

With these principles in mind, we proceed to consider Hill's double jeopardy arguments.

■ A. *To avoid constituting punishment for double jeopardy purposes, must a statute imposing a civil penalty actually and intentionally make the penalty proportional to the State's loss?* This argument calls into question the two statutes dealing with the civil penalty assessed against Hill: Iowa Code sections 423.18(1) and 423.27. Section 423.18 provides in part: "In addition to the tax or additional tax, the taxpayer shall pay a penalty as provided in section 421.27."

Section 423.27 provides:

A person who willfully makes a false statement in regard to the purchase price of a vehicle subject to taxation under section 423.7 with the intent to evade the payment of tax shall be assessed a penalty of seventy-five percent of the amount of tax unpaid and required to be paid on the actual purchase price less trade-in allowance.

We think *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), controls this question, and we think the reasoning of that case requires us to reject Hill's first argument. The precise issue in *Halper* was whether and under what circumstances a mandatory civil penalty may constitute punishment for double jeopardy purposes. The Court announced a rule that permits the imposition in the ordinary case of a fixed penalty roughly proportional to the damages caused:

What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

*Halper,* 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

The Court also (1) left to the discretion of the trial court whether any part of the civil penalty imposed constitutes punishment and (2) indicated how accurate the trial court must be in making that determination:

We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the Government may receive without crossing the line between remedy and punishment. While the trial court's judgment in these matters often may amount to no more than an approximation, even an approximation will go far towards ensuring both that the Government is fully compensated for the costs of corruption and that, as required by the Double Jeopardy Clause, the defendant is protected from a sanction so disproportionate to the damages caused that it constitutes a second punishment.

*Id.* at 450, 109 S.Ct. at 1902–03, 104 L.Ed.2d at 502–03 (citations omitted).

■ It is apparent to us from these passages that the trial court must determine what part of the penalty is remedial and what part is punishment. This determination is done on a case-by-case basis. *See United States v. Ursery,* —— U.S. ——, ——, 116 S.Ct. 2135, 2145, 135 L.Ed.2d 549, 564 (1996) (recognizing that *Halper* requires the trial court to apply a case-by-case balancing test). Here the district court properly performed the balancing test after hearing the State's evidence on what expenses it incurred in ferreting out the alleged fraud that Hill perpetrated. We adopt the following findings made by the district court on this point:

In the present case the civil fraud penalty is not overwhelmingly disproportionate to the damages incurred by the government, as it bears a rational relationship to the government's costs of the investigation, assessment, and administrative work entailed in discovering and handling Hill's alleged violation. At the hearing on this motion, testimony suggested that the State's expenses in these matters include salary, office and office equipment, vehicle

and gas, and meals. Even were it discovered that the $337.50 [penalty] is in excess of the State's expenditures, it surely is not so greatly excessive so as to make it non-remedial for double jeopardy purposes. For these reasons, the penalty paid by Hill did not amount to a "punishment" for double jeopardy purposes. The Court finds that the imposition of the "civil fraud penalty" on Hill does not bar the prosecution at issue under the Double Jeopardy Clause of the United States Constitution.

■ Contrary to Hill's contention, *Halper* does not require the statute imposing the penalty to "actually and intentionally" make the penalty proportional to the State's loss. There is no good reason for such a requirement because, as we have seen, the trial court must decide whether any portion of the penalty constitutes punishment for double jeopardy purposes. As mentioned, this determination requires the State to prove the penalty imposed is roughly proportional to the State's loss. If the State's proof falls short, double jeopardy attaches; otherwise, it does not.

■ B. *To avoid constituting punishment for double jeopardy purposes, must a statute imposing a civil penalty serve solely a remedial purpose?* Hill's position is that even if *one* of the purposes of the civil penalty in question is remedial, that is not the penalty's *sole* purpose. The penalty, Hill argues, must therefore be presumed to be punitive. To support her position, Hill relies on the following language in *Halper:*

Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. Furthermore, "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." From these premises, it follows that a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can *only* be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand

the term. We therefore hold that, under the Double Jeopardy Clause, a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1901–02, 104 L.Ed.2d at 501–02 (emphasis added) (citations omitted).

In *State v. Kocher,* 542 N.W.2d 556 (Iowa 1996), we addressed the identical "sole purpose" argument in a double jeopardy challenge to OWI convictions raised by two defendants in two separate criminal cases. The State had previously suspended the licenses of both defendants through administrative proceedings. The *Kocher* defendants relied on the exact language Hill extracted from *Halper.* We rejected the challenge, stating:

While this sentence ["[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment . . . ."] appears to give some support to the defendants' contention, the actual holding in *Halper* does not:

We therefore hold that under the Double Jeopardy Clause a defendant who has already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not *fairly be characterized as remedial,* but only as a deterrent or retribution.

*Kocher,* 542 N.W.2d at 558 (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901, 104 L.Ed.2d at 502 (emphasis added)).

Applying the test announced in the holding from *Halper,* we concluded in *Kocher* that "our revocation statute under implied consent may fairly be characterized as remedial and that a revocation under section 321J.12 and a subsequent OWI prosecution do not offend double jeopardy principles." *Id.* The remedial aspect of the implied consent law, we recognized, is addressed to public safety: "to reduce the holocaust on our highways part of which is due to the driver who im-

bibes too freely of intoxicating liquor." *Id.* (quoting *Severson v. Sueppel,* 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (1967)).

We noted in *Kocher* that we had earlier applied the same test in *State v. Funke,* 531 N.W.2d 124 (Iowa 1995). In *Funke,* we rejected a double jeopardy claim based on an administrative revocation for habitual traffic offenders. In doing so, we stated:

> The determination [of whether the revocation is punitive] turns, not on the nature of the underlying proceeding[, *i.e.,* civil or criminal], but on the purpose actually served by the sanction. When a civil sanction as applied in an individual case can only be said to serve the twin goals of punishment—deterrence and retribution—then it must fairly be regarded as triggering the protection of the Double Jeopardy Clause. Conversely, a civil sanction that serves principally a remedial purpose does not subject a defendant to the hazards otherwise safeguarded by the Fifth Amendment's protection against multiple punishment.

*Funke,* 531 N.W.2d at 126 (citations omitted). The habitual offender revocations, we noted, are designed to protect the public from drivers who habitually refuse to obey the rules of the road—not to punish the offender. *Id.*

■ As *Kocher* and *Funke* explain, under the *Halper* holding a dominant remedial purpose renders a civil penalty nonpunitive for double jeopardy purposes even if the penalty serves in some respect to act as a deterrent. Here the civil penalty in section 423.27 serves the remedial purpose of compensating the State for its costs associated with the investigation of defendant's alleged fraud.

■ *C. Is the penalty (1) conditioned on the commission of a crime and (2) collected only after the defendant is arrested for the underlying offense?* Hill claims the civil penalty in this case is like the tax on possession and storage of dangerous drugs in *Montana Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). The statute before the Court in *Kurth Ranch* expressly provided that the tax was to be "collected only after any state or federal fines or forfeitures have been satisfied." Only those persons arrested were required to file a return and pay the tax. *Kurth Ranch,* 511 U.S. at ——, 114 S.Ct. at 1941, 128 L.Ed.2d at 772–73.

The Court focused on an attribute of the Montana statute that rendered it punitive and violative of the Double Jeopardy Clause: The tax was conditioned on the commission of a crime. In the Court's view, this condition was "significant of penal and prohibitory intent rather than the gathering of revenue." *Id.* at ——, 114 S.Ct. at 1947, 128 L.Ed.2d at 779–80 (quoting *United States v. Constantine,* 296 U.S. 287, 295, 56 S.Ct. 223, 227, 80 L.Ed. 233, 239 (1935)). On this point, the Court said:

> In this case, the tax assessment not only hinges on the commission of a crime, it also is exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place. Persons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the tax.

*Id.* at ——, 114 S.Ct. at 1947, 128 L.Ed.2d at 780.

In *Kurth Ranch,* the Court was dealing with a tax statute. The Court expressly disclaimed reliance on *Halper,* concluding that *Halper's* case-specific approach was impossible to apply outside the context of a civil-penalty provision. The Court noted that "tax statutes serve a purpose quite different from civil penalties, and *Halper's* method of determining whether the exaction was remedial or punitive simply does not work in the case of a tax statute." *Id.* at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781.

■ Conversely, we think the *Kurth Ranch* analysis does not work in the case of a civil-penalty provision. *Kurth Ranch* must necessarily apply a categorical approach, meaning that one must look to the language of the tax statute to determine whether the statute is punitive. We therefore reject any analogy Hill attempts to make between the tax in *Kurth Ranch* and the civil penalty in section 423.27. We conclude it is irrelevant whether the penalty in question is conditioned on the commission of a crime and

collected only after the defendant is arrested for the underlying offense.

Nor is it relevant that section 423.18(1) (referring to the penalty in section 423.27) is found in the same section as the criminal penalties established in Iowa Code section 423.18(2). Whether or not this evidences a punitive intent on the part of the legislature is only important in a categorical approach analysis and not in a case-specific approach analysis.

That there is a disparity in penalty between a nonintentional failure to file a return and pay the tax (seven and one-half percent) and the willful failure (seventy-five percent) to do so is also irrelevant. As to this disparity, the question in a specific case will always be whether there is a rational relationship between the penalty and the loss suffered by the State. Any part of the penalty in excess of this rational relationship will of course be deemed punishment and will therefore trig-

ger the double jeopardy protection of the Fifth Amendment.

In reaching these conclusions, we however reject Hill's contention that the section 423.27 penalty is by statute (1) conditioned on the commission of a crime and (2) collected after the defendant is arrested for the underlying offense.

### IV. *Disposition.*

We have considered all of Hill's arguments whether or not we have addressed them. Because we find no merit in any of them, we affirm.

**AFFIRMED.**