STATE OF IOWA, Appellee, v. CLARION WELTHA, Appellant.

No. 44913.

520

MAY 14, 1940.

Fred D. Everett, Attorney General, Jens Grothe, Assistant Attorney General, and George D. Aden, County Attorney, for appellee.

C. A. Smedal, for appellant.

SAGER, J.—Primary highway No. 69 passes in a straight line north and south through Hamilton county except that about 2 miles west of Randall, it runs east and west for about a mile. Defendant operated a garage at Randall but lived with his family about 2¾ miles west. The road out of Randall to No. 69 was graveled. On Easter Sunday, April 17, 1938, at about 6 :30 or 7 :30 p. m., defendant was proceeding homeward from his garage. His course took him over the gravel to the pavement and thence on the east and west stretch of No. 69 to the place where that highway turned north. Meanwhile one Rydson, accompanied by Miss Urbatch and her sister, was approaching on No. 69 from the north. The two cars met in the curve with the result that all of the occupants of the Rydson car were killed. One of the girls was alive after the accident and was taken to Story City but died either on the way or shortly after reaching the hospital there. Defendant was found slumped over the steering wheel of his automobile unconscious. He was hurried to the same hospital but for some reason was left in a wheel chair on the veranda. From thence he was taken to the operating room and placed on the table.

Doctor Lewis, whose evidence will have attention hereafter, gives a description of the defendant's condition. The defendant, this witness said, was badly battered, his face covered with blood, and he had cuts about his head and face; his jaw was broken and he had lost some teeth. Doctor Lewis said that he learned later that appellant's lower jaw was so "busted" that they had to cut underneath the jaw to wire it together; that defendant had a broken leg, was in a state of shock, and his condition not good.

Another witness for the State testified: "I stood beside the chair in which he [defendant] was sitting. * * * There was blood on the porch floor and his head was dreadfully swollen. * * * He complained or groaned. I knew he was hurt dreadfully."

On the whole, defendant was so disfigured that Doctor Lewis did not recognize him at the trial. Notwithstanding ap-

pellant's condition, and the fact that he was then being treated by Doctor Lekwa, Lewis proceeded to draw from defendant's arm the blood sample which was the subject of much controversy in the case. No effort was made to contact defendant's wife although she was in the corridor of the hospital. There was no one present to speak for the defendant, and he being unconscious could neither assent nor protest. As stated above, defendant was in a hospital in Story county. Doctor Lewis was coroner of Hamilton county. He had accompanied the sheriff of that county to the scene of the accident. Finding the defendant no longer there, he went to the hospital where the blood sample was taken. There had been no information filed against the defendant and he was not under arrest.

Doctor Lewis, by virtue of his position as coroner, was a county official of Hamilton, not of Story, county. Section 520, Code of 1935. We are not called on to decide whether, even if he had been coroner of Story county, he would have been justified. It might not be out of place to say, however, that neither in the statutes nor in our decisions do we find warrant for what was done. The coroner is not listed as a peace officer in section 13405, Code of 1935, and if he had been, Lewis was not acting at the time either under any authority of his office, or the warrant of a magistrate. We have here then a situation where a volunteer, without legal warrant and without express or implied assent, intrudes himself into an operating room and takes from an unconscious patient a blood sample to be used to make or sustain possible future criminal prosecution. We cannot bring ourselves to approve such a course; and we find no authority which requires us to do so. We do not overlook the many citations in the briefs, least of all our own decisions. State v. Tonn, 195 Iowa 94, 191 N. W. 530; State v. Rowley, 197 Iowa 977, 195 N. W. 881; State v. Rowley, 216 Iowa 140, 248 N. W. 340; State v. Hassan, 149 Iowa 518, 128 N. W. 960.

The majority opinion in State v. Tonn, supra, speaks for itself. The dissenting opinion expresses the views in which this writer would have concurred had he then been on this bench.

That he is not alone in this view, see the vigorous expression of Mitchell, J., in Vilas v. Board of Assessment & Review, 223 Iowa 604-615, 273 N. W. 338, 343, 344. See also State v. Rowley, 216 Iowa 140, at page 145, 248 N. W. 340, at page 342, where we used this language, Kintzinger, J., speaking for the court:

"Defendant also complains of the admission of certain exhibits, claimed to have been obtained without a search warrant, in violation of the search and seizure provisions of the Constitution of Iowa. The writer of this opinion believes there might be some merit in this contention, notwithstanding our holding in State v. Tonn, 195 Iowa 94, 191 N. W. 530, provided the evidence showed the officers entered defendant's home without a search warrant. There was evidence in the record, however, tending to show they had a search warrant, and it was read to Mr. and Mrs. Rowley."

We are not called on nor are we attempting to review or reconsider the rule of the Tonn and other cases cited. Those decisions deal with persons under arrest or charged with crime. We are not disposed to broaden the rule announced by them to permit an invasion of the person of a citizen under the circumstances disclosed by this record. We hold that the court was in error in receiving in evidence, over timely objection by the defendant, the blood sample and the testimony of experts based thereon. If further investigation of this question be desired, the authorities will be found collected in the note to United States v. Lefkowitz, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877, 82 A. L. R. 775, at page 782, the earlier notes in the same series, and citations in current supplements.

■ What we have said makes it unnecessary to consider defendant's complaint that the blood sample was introduced without sufficient proof of identity, but it must be conceded that greater care might have been taken in tracing this blood in its course from the operating room in the Story City hospital to the courtroom in Hamilton county where the case was tried nearly 7 months later. Doctor Lewis, after taking the sample, put

the tube containing the blood in his pocket where apparently he carried it for about two hours when he delivered it about 10:30 p. m. to Miss Jurgens at a hospital in Hamilton county. Miss Jurgens turned it over to an office girl. The office girl in her testimony laid sufficient foundation with reference to addressing and mailing to raise a presumption that it was delivered by the postal authorities to the addressee. It was thus addressed: "From Dr. W. B. Lewis, Webster City, Iowa, State Hygienic Laboratories, State University of Iowa, Iowa City, Iowa, serological Division Chemistry." Who made up the personnel of that department is not disclosed. The parcel came into the hands of Doctor Borts, an assistant director. Deeming it for the attention of Doctor Gibson, Borts put it in some sort of a mailbox in the office. When or by whom removed from thence does not appear. This unidentified person put the parcel in another mailbox. From this latter box it was taken by an unnamed assistant to Doctor Gibson on April 20th, three days after the sample was taken. Sometime in the "late summer", Sheriff Lear of Hamilton county went to Iowa City and got the exhibit. Where, how, and by whom kept from April 20, 1938, to this "late summer" date is not shown. True, Doctor Gibson says the exhibit at the trial was in the same condition as it was in the beginning; but without more of a foundation, this was a conclusion and not sufficient. See State v. Hossack, 116 Iowa 194, 201-203, 89 N. W. 1077; State v. Phillips, 118 Iowa 660, 667, 92 N. W. 876; State v. Kingsbury, 191 Iowa 743, 744-748, 183 N. W. 325; Joyner v. Utterback, 196 Iowa 1040, 1042, 1043, 195 N. W. 594; State v. Reid, 200 Iowa 892, 894, 205 N. W. 517.

 Another matter demanding consideration is the ruling of the trial court on defendant's motions to direct and for a new trial on the ground that the State had failed to prove its cause. The trial court in its eighth instruction said:

"Negligence, to become criminal, must be reckless, wanton, and of such character as to show an utter disregard for the life or safety of others under circumstances likely to cause injury. It must be such negligence as to show a reckless indifference as

to the consequences of one's conduct—the acts of a person, in other words, who does not care and feels no concern whatever as to whether or not he brings about death or injury to another person.''

By instruction No. 10, the court told the jury that a person was intoxicated when under the influence of liquor to the extent that his ''passions are visibly excited and his judgment impaired.'' The instruction went on to say that the mere fact that the defendant may have been intoxicated within the meaning of the law would not constitute criminal negligence as defined by the instructions unless more was proven, as required by instruction No. 11. This last instruction told the jury they should consider ''that if a person voluntarily puts himself so far under the influence of intoxicating liquor that his judgment is impaired and his mind loses its normal sense of self-restraint and control to such an extent that he thereby becomes utterly reckless and indifferent to the consequences of his act,'' that this would be criminal negligence, making the defendant responsible for the death of another person. We are setting out only so much of the instructions referred to as dealt with criminal negligence resulting from intoxication. There is no evidence whatever in this record to support a finding of guilt under these instructions. No one testified that the defendant was intoxicated. Several witnesses for the plaintiff swore that they smelled liquor on his breath at the hospital, while a considerable and larger number who were in a better position to notice an alcoholic odor, testified to the contrary. If this were all, the finding of the jury that there was a smell of intoxicants upon the defendant would be conclusive of that fact whatever our decision might have been if we were the jury.

Rydson, driving the car in which Miss Urbatch was killed, was traveling approximately 40 miles per hour; and the defendant at the same speed. No one saw the accident as it actually happened and there are no circumstances to indicate care or lack thereof on the part of either driver. True, one or more witnesses testified that they saw the cars as they came together

but their evidence as a whole shows that they did not in fact do so. No witness testified that the defendant was driving on the wrong side of the highway or that he was driving in a wavering, zigzag or irregular course, or at excessive speed. In fact, there is no evidence from which a jury could do more than guess as to who, if anyone, was at fault.

Four witnesses traveling behind the defendant on the east and west stretch testified to the difficulty of seeing because of the brilliance of the setting sun, but none testified to anything done or omitted by defendant which amounted to negligence, to say nothing of criminal negligence. The death of the occupants of the Rydson car was no more evidence that the defendant was reckless or negligent, than that Rydson was. The tragic consequences of this collision are such as to evoke much sympathy for the victims and perhaps to impair judgment in passing on the conduct of the defendant because he alone survived. But a reading of this record persuades us that the State wholly failed to sustain the charge made in the indictment and that defendant's motion to direct should have been sustained.

Among the errors assigned by appellant is one to the effect that the court should not have permitted witness Kirsher, a patrolman, to testify to certain statements alleged to have been made to the latter by the accused when in the hospital. Section 302, chapter 134, Acts of the Forty-seventh General Assembly, and section 11267, Code of 1935, are relied on. We find no error here. The first citation has to do with accident reports, and the Code section, with incriminating questions. The testimony elicited from Kirsher did not fall within the purview of either of these enactments. Defendant makes other assignments of error, but all that need attention have been disposed of by what has gone before.

For the errors pointed out, the cause should be, and it is, reversed.—Reversed.

HAMILTON, C. J., and BLISS, RICHARDS, HALE, and MILLER, JJ., concur.

MITCHELL, OLIVER, and STIGER, JJ., concur in result.

MITCHELL, J. (specially concurring)—I concur in the result reached, but think that the court should specifically overrule the opinion of this court in the case of State v. Tonn, 195 Iowa 94, 191 N. W. 530.

The rule announced in the Tonn case is contrary to the federal rule and the great weight of authority.

There were two dissenting opinions filed in the Tonn case. One by the then Chief Justice Preston and the other by one of the outstanding members of this court, Justice Weaver.

My views agree with Justice Weaver, and he has stated it far better than I could. I quote from his dissent [195 Iowa 94, 119, 191 N. W. 530, 540]:

"It seems little less than solemn mockery for us to protest our devotion to the 'sacred constitutional right,' or our virtuous purpose to rigidly enforce it, and in the same breath declare our approval of the admission of 'evidence without any inquiry as to how that evidence was obtained.' The principle so involved finds a suggestive parallel in the case of the candidate for office who maintains his equipoise on the question of prohibition by declaring himself in favor of the law, but opposed to its enforcement. The suggestion that the person whose rights are invaded by a wrongful search or seizure has his remedy in an action for damages against the individual committing the trespass is scarcely worthy of the court which refuses to give him the protection to which he is entitled under the charter which is supposed to command the obedience of the judiciary, as well as of the private citizen. It is this growing disregard of fundamental rights and orderly methods of justice which has given rise to the infamies of the so-called 'sweat-box' and 'third-degree' practices which cast discredit upon our professions of loyalty to law. The reasoning which justifies those things, and justifies a rule by which the court will refuse to inquire into the means employed to obtain evidence, if carried to its logical results, would be equally effective to admit evi-

528

dence procured by physical torture, and restore the rack and thumbscrew to the dignity of judicial aids in the prosecution of alleged criminals. True, torture has been nominally outlawed in civilized lands, and the court would undoubtedly so declare, were that concrete question presented for its consideration; but the legal and constitutional guaranties of protection against the use of the torture chamber are not a whit less sacred than those which guarantee each and every citizen against illegal searches and seizures.''

The argument in the majority opinion in the Tonn case, seemed to be based upon the theory that to hold the evidence inadmissible would hamper the prosecution of criminals. I too believe in law enforcement, but I do not think that in the name of law enforcement the rights guaranteed in the constitution to every individual even if he is charged with a crime, should be swept aside.

In the case at bar, the appellant was unconscious, lying on an operating table, and according to the doctor not even comforted by the presence of his kin, when the blood was taken from him. This is the evidence, yes, the sole evidence relied upon to sustain the conviction.

Evidence so obtained should not be admitted, and so that there would be no question about it, I would overrule the case of State v. Tonn.