STATE OF IOWA, appellee, v. RALPH KINDSCHUH, appellant.

No. 49087.

(Reported in 80 N.W.2d 750)

FEBRUARY 5, 1957.

B. C. Sullivan, of Rockford, for appellant.

Dayton Countryman, Attorney General, George West and Dudley C. Lowry, Assistant Attorneys General, and Loren N. Brown, County Attorney, for appellee.

OLIVER, J.—Defendant was charged with the crime of operating a motor vehicle upon the pubic highways of the state while intoxicated. Trial to a jury resulted in his conviction. From the judgment thereon he appeals.

A highway patrolman testified the manner in which an automobile was being operated upon a public highway excited his attention. He followed and stopped it and arrested appellant, the driver, who, in the officer's opinion, was intoxicated. Appel-

lant was taken to the sheriff's office where, with his consent, a specimen of his blood was secured by Dr. Robert H. Huber. From his observation of appellant, Doctor Huber was of the opinion appellant was then intoxicated.

The specimen of blood was taken to Dr. Harold W. Morgan, a specialist in pathology and laboratory techniques, who made a chemical test which showed 239 milligrams of alcohol per hundred cubic centimeters of blood. This would amount to approximately one-half ounce of alcohol in the blood stream of a person the size of appellant. Doctor Morgan testified the blood normally contains no alcohol, that a person becomes intoxicated when his blood contains 150 milligrams of alcohol per hundred cubic centimeters and that in his opinion a person with 239 milligrams of alcohol per hundred cubic centimeters of blood would be intoxicated.

Appellant assigns as error the overruling of his motion to strike the testimony of Doctor Morgan and his laboratory technician and the part of the testimony of Doctor Huber relative to the taking of the specimen of appellant's blood. There was evidence Doctor Huber placed the specimen of blood in a bottle, sealed the cork, placed an identifying paper with it in a container, sealed the container with sealing wax and delivered it to the patrolman who kept possession of it until he delivered it, in the same sealed condition, to Doctor Morgan's laboratory technician. The latter testified it remained in his control in the sealed container, identified by appellant's name, until he delivered it to Doctor Morgan. Doctor Morgan testified he broke the seal and did the analysis.

Appellant does not contend the evidence was insufficient to show the identity and chain of possession of the specimen analyzed by Doctor Morgan. His specific complaint is the record shows there was a white powder in the bottle in which the specimen was placed and kept and this invalidated the analysis and the evidence concerning it.

The patrolman testified this bottle was taken from an unlocked drawer in the sheriff's office. In it, "There was little flakes of substance which Doctor Morgan has in all of his blood specimens."

Doctor Morgan testified potassium oxalate is a chemical which is frequently used to preserve a sample of blood used for any chemical determination other than calcium. "Q. Is this substance often put into containers of blood samples * * *? A. Yes. This, it is obtained from our office. We routinely place it in the container. * * * it does not affect the results for the tests of intoxication. It prevents the blood from clotting so it is easier to preserve."

Doctor Huber testified he took the specimen of appellant's blood "and put it in a bottle that they have at the sheriff's office for these tests. The cork was in the bottle when it came to me. It is Doctor Morgan's custom to use that substance, potassium oxalate, in his bottles. * * * that substance will not alter the test. * * * the chemical in that bottle keeps the blood from coagulating and forming blood clots." Doctor Huber admitted he did not, of his own personal knowledge, know the substance was potassium oxalate, but assumed it was from the way it worked. It "looked and acted like the substance we always used."

The distinguished trial court pointed out, "that if Doctor Huber had gone to a pharmacy, asked for potassium oxalate, received from the pharmacist a package marked 'potassium oxalate', and had mixed some of the contents with the blood specimen, then there would be less apparent reason to question the alteration of the specimen for purpose of the test. Yet, fundamentally, under those circumstances, Doctor Huber could testify from his own knowledge only that the substance 'looked and acted like potassium oxalate', as he did in this case. To positively and affirmatively exclude every possibility of error, Doctor Huber, or some competent person, would be required to scientifically analyze the chemical used not only as to its identity but also as to its purity."

In State v. Van Tassel, 103 Iowa 6, 13, 72 N.W. 497, 499, the court considered defendant's contention that the evidence of the identity of certain organs taken from a body "must establish their identity to a moral certainty and beyond all reasonable doubt", and held the identification sufficient to justify the admission of the analysis of the organs though there was some conflict as to the number of jars sent and received.

Although Doctor Huber did not positively identify the white powder, his testimony that it "looked and acted like the substance we always used", together with the testimony of Doctor Morgan and the patrolman, hereinbefore set out, furnished sufficient identification to justify the order of the trial court overruling the motion to strike all such evidence.

The weight to be given this or any other evidence was, of course, for the jury to determine.—Affirmed.

All JUSTICES concur.