STATE OF IOWA, appellee, v. DONALD J. FOX, appellant.

No. 49213.

(Reported in 85 N.W.2d 608)

October 15, 1957.

1396

Edward L. O'Connor, of Iowa City, for appellant.

Norman A. Erbe, Attorney General, James H. Gritton, Assistant Attorney General, and William M. Tucker, County Attorney, for appellee.

OLIVER, J.—Defendant was tried to a jury, convicted and sentenced for operating a motor vehicle upon a public highway while intoxicated. He appeals and presents various grounds for reversal.

The record shows that September 29, 1956, at 1:30 a. m., the attention of Highway Patrolman Reddick was attracted to an automobile standing in a street in Iowa City with its tail brake light lighted and its engine running. He walked beside it and saw defendant sitting in the driver's seat apparently in a stupor, with his arms up over the steering wheel, his head leaning down and resting upon his hands and one foot upon the brake pedal. The engine was running and the car was in drive gear. There was mucus hanging down from defendant's nose to a cigarette in his mouth. The mucus had put out the cigarette. The officer noticed an odor of liquor. When defendant was aroused, he said, "I'm pretty drunk." He said he had eaten supper in West Liberty and had gone to a tavern and drank beer and then to the house of a friend where he drank more beer before starting for Iowa City. In the opinion of the officer defendant was intoxicated.

Defendant was taken to the police station. Dr. I. A. Rankin arrived there between 1:30 and 2 a. m., and examined him. The doctor testified defendant said he was operating his car and was driving alone to his home in Iowa City from West Liberty where he had been drinking beer at a tavern until 7 or 7:30 p. m., and later at the home of a friend. He said he had consumed six bottles of beer before starting to drive from West Liberty to Iowa City, a distance of nineteen miles. The tests for sobriety given defendant by Doctor Rankin showed definite impairment of his ability to walk straight and to turn. His speech was slow. His eyes were watery and bloodshot. He was disoriented as to time.

Dr. Rankin testified defendant's intoxication was obvious. Alcoholic intoxication builds up gradually. Defendant furnished a specimen of urine which, when tested, showed 330 milligrams of alcohol per 100 cc. of urine. Dr. J. I. Routh, head of the clinical biochemistry laboratory at the hospital of the State University, testified a person having urine alcohol concentration of 330 milligrams per 100 cc. of urine would, in his opinion, be intoxicated.

He testified also that, to reach an alcohol level of 330 milligrams per 100 cc. of urine, under optimal conditions, would require the consumption of 13 to 15 bottles of beer. An hour later there would be a maximum concentration in the blood and, "let us say in another hour you would have a concentration of as high as 330 milligrams in the urine." The maximum concentration of alcohol in the blood stream under the most favorable conditions occurs about an hour after it is taken. If it is consumed over a long period with food this will change the rate of absorption. Each hour, the alcohol in the blood stream oxidizes and decreases at the rate from 15 to 20 milligrams per 100 cc. of blood. Doctor Routh testified the intoxication standard of 150 milligrams of alcohol per 100 cc. of blood corresponds with 200 milligrams of alcohol per 100 cc. of urine. See State v. Slater, 242 Iowa 958, 960, 48 N.W.2d 877; Article by Mason Ladd and Robert B. Gibson in 24 Iowa Law Review 191.

I. After Doctor Rankin had testified intoxication builds up over a period of consumption and alcohol in the blood stream reaches its maximum for the given amount in an hour's time, he was asked as an expert who had examined and observed defendant and knew of the tests given him, "do you have an opinion whether or not he would have been intoxicated, let us say, one hour prior to the time of your examination?" Objection by defendant was overruled. The doctor answered: "If my answer can be influenced by the things he told me, then there are several factors entering the thing. He told me he did the drinking in West Liberty at a tavern there, following which he went to a friend's home, following which he drove to Iowa City, with the lapse of a considerable amount of time. Now if he did this drinking in West Liberty, he didn't suddenly get his alcohol in

the blood in Iowa City; it had to be there long before he got to Iowa City." The doctor continued: "A. The answer is yes."

Appellant assigns error to this, "because it was clearly contrary to the rules of law in that it permitted the doctor to invade the province of the jury and to give an expert opinion contrary to the rule of law holding that presumptions do not travel backwards." The question put to the doctor was merely whether he (an expert) had an opinion. The answer was, "yes". But we do not agree that such an opinion by a qualified expert would be inadmissible, under the factual situation upon which it was based, that defendant who, in the opinion of the doctor, was intoxicated when examined at 2:15 a. m., had done all his drinking some hours previously. The rule that a presumption does not travel backward, referred to in State v. Liechti, 209 Iowa 1119, 1121, 229 N.W. 743, would not be applicable to expert testimony not based upon a presumption. Nor would such expert opinion constitute an invasion of the province of the jury. Grismore v. Consolidated Products Co., 232 Iowa 328, 339 et seq., 5 N.W.2d 646, and citations; Article in 24 Iowa Law Review 191.

■ II. Appellant challenges the admissibility in evidence of Exhibit 3, the specimen of urine furnished by him, together with the testimony of its analysis. This challenge is without foundation. The record shows a laboratory technician had previously sealed and initialed a new bottle in which the preservative for such a specimen had been placed. Doctor Rankin broke this seal, placed the specimen of urine in the bottle, sealed and initialed the bottle and delivered it to the witness Ashe at the laboratory. Ashe gave the doctor a receipt, initialed the bottle and locked it in the laboratory safe, together with the record slip which accompanied it. The laboratory technician unlocked the safe, removed the bottle and record, broke the seal on the bottle, made the test, and placed the bottle and record in a container, which she sealed with wax, initialed, and stored in a steel box in which such specimens were kept. She testified the exhibit was in substantially the same condition at the trial as when she made the test. The court properly overruled appellant's objections to this evidence. State v. Kindschuh, 248 Iowa 440, 80 N.W.2d 750; State v. Werling, 234 Iowa 1109, 13 N.W.2d 318.

 III. Over objections by appellant, Doctor Routh was permitted to answer: "A. I would state that a person having urine alcohol concentration of 330 milligrams per 100 cc. of urine would, in my opinion, be intoxicated." Appellant contends this was not a proper subject for expert testimony and invaded the province of the jury. The authorities are contrary to appellant's contention. State v. Williams, 245 Iowa 401, 62 N.W.2d 241; State v. Slater, 242 Iowa 958, 48 N.W.2d 877; 24 Iowa Law Review 191; Annotations in 127 A. L. R. 1513 and 159 A. L. R. 209; Grismore v. Consolidated Products Co., 232 Iowa 328, 339 et seq., 5 N.W.2d 646, and citations. It is clear expert testimony was here proper.

 IV. There is no merit in appellant's contention he was in such condition he did not have the capacity to commit the crime of operating a motor vehicle while intoxicated. The rule is thus stated in State v. Johnson, 215 Iowa 483, 488, 245 N.W. 728, 731:

"We have held in numerous cases that voluntary drunkenness is no defense for crime unless a specific intent is an essential element of the offense charged, and not then unless the accused was so drunk as to be incapable of entertaining the requisite specific intent [authorities]."

 This is the general rule. 22 C. J. S., Criminal Law, sections 66 and 68. The statute does not make specific intent an essential element of the crime of operating an automobile while intoxicated. Hence, the depth of defendant's voluntary intoxication would not serve as a defense to the charge.

 V. Error is assigned to the refusal of appellant's requested instruction that, "the offense of intoxication is an included offense in that of operating a motor vehicle while intoxicated," etc. This refusal was correct. The frequently cited case of State v. Garcia, 198 Iowa 744, 746, 200 N.W. 201, 202, holds, "the two offenses are entirely separate" and a conviction for intoxication does not bar a prosecution for operating an automobile while intoxicated.

 VI. Appellant argues there was no evidence he was intoxicated while driving his automobile from West Liberty to the place in the Iowa City street where officer Reddick found

him. Were that contention supported by the record it would avail appellant nothing. The officer testified he found appellant in the driver's seat with one foot pressing on the brake and with the engine running and the car in drive gear. This was sufficient to constitute "operating" the automobile within the meaning of the statute. State v. Webb, 202 Iowa 633, 210 N.W. 751, 49 A. L. R. 1389.

Other asserted errors have been considered and determined to be without merit.—Affirmed.

All JUSTICES concur.