**STATE of Iowa, Appellee,**

v.

**George William HRAHA, Appellant.**

**No. 54786.**

Supreme Court of Iowa.

Jan. 14, 1972.

 

P. F. Elgin, Indianola, for appellant.

Richard C. Turner, Atty. Gen., Richard N. Winders, Asst. Atty. Gen., Robert Gottschald, County Atty., for appellee.

MASON, Justice.

George William Hraha was charged by county attorney's information filed December 21, 1970, with the offense of operating a motor vehicle while under the influence of an alcoholic beverage contrary to section 321.281, The Code 1966.

Following his plea of not guilty the matter proceeded to trial by jury. Defendant's motion for mistrial at the close of the State's evidence and renewed with motion for directed verdict at the close of all evidence was overruled and the matter submitted to the jury which returned a verdict convicting defendant of the offense charged.

The court overruled defendant's motion for new trial and sentenced him to pay a fine of $300 and costs of prosecution. The court provided in its judgment that in the event of nonpayment of the fine, defendant was to be confined in the Warren county jail for a period of 60 days.

Defendant appeals from this judgment assigning two errors relied on for reversal. He asserts the court erred in overruling objection: (1) to testimony regarding a breath test administered to him by an Indianola police officer and (2) to certain of the court's instructions as being incorrect statements of the ˙law applicable to the case.

We consider the assignments in reverse order.

I. Defendant questions correctness of instructions 15, 16 and 17 in his second as-

signed error. The State argues this assignment presents nothing for review in this court since defendant did not properly preserve in the trial court any claimed error as to the instructions.

The record discloses that before argument to the jury began, the court furnished counsel with a preliminary draft of the instructions. Before reading them to the jury, the court submitted to counsel its instructions in their final form and granted time for counsel to make objections and take exceptions before the instructions were read to the jury. At this point defendant objected to the instructions mentioned as being incorrect statements of the law as applicable to the case under consideration. The objection to instruction 16 was more specific as will be pointed out later.

In motion for new trial defendant alleged "7. that the court erred in failing to sustain defendant's objections to instructions 15, 16 and 17," without stating the grounds upon which he concluded error had been predicated.

■ The trial court fully complied with rule 196, Rules of Civil Procedure, which is applicable to instructions of juries in trials of criminal prosecutions. Section 780.35, The Code 1966. State v. Schmidt, 259 Iowa 972, 979, 145 N.W.2d 631, 636, certiorari denied 386 U.S. 965, 87 S.Ct. 1046, 18 L.Ed.2d 115. Although the problem considered in the cited case dealt with defendant's failure to specifically object to the court's refusal to give his requested instruction, the opinion points out that rule 196, R.C.P., directs, in part, all objections to instructions must specify the objectionable matter, on what grounds and none other will thereafter be considered. It is also made clear in the Schmidt decision that compliance with rule 196, R.C.P., is made mandatory by section 780.35, The Code 1966, in criminal prosecutions.

The problem of preserving for review error based upon an attack of the court's instructions or failure to instruct is dis-

cussed at length in State v. Franklin, 163 N.W.2d 437, 440–442, (Iowa 1968); State v. Brown, 172 N.W.2d 152, 157–160, (Iowa 1969); and State v. Gilmore, 181 N.W.2d 145, (Iowa 1970).

■ Defendant's assertion the instructions under attack were incorrect statements of law applicable to the facts, fails to qualify as a specific objection required under rule 196, R.C.P., as it does not alert the trial court to any particular claimed error to be corrected. State v. Brandt, 182 N.W.2d 916, 918, (Iowa 1971). In Briney v. Tri-State Mutual Etc. Ins. Co., 254 Iowa 673, 689, 117 N.W.2d 889, 898, this court held an objection to an instruction on the ground it is not a correct statement of the law was not sufficiently definite under the rule where it did not point out wherein it was wrong so that the trial court might correct it.

■ In objecting to instruction 16 defendant added the contention the instruction attempted to limit the jury in its consideration of matters in evidence but did not request additional or more explicit instruction. Where the instruction is correct as given but not as explicit as a party may desire, he must request an additional instruction before the jury is charged in order to preserve any claimed error as a basis for appeal. State v. Brown, 172 N.W. 2d at 157–160, and authorities cited.

Since defendant did not preserve any claimed error at trial or in motion for new trial, his second assignment presents nothing for review in this court.

II. Defendant's other assignment concerns admissibility of testimony of Cleo Aldridge, an Indianola police sergeant, and Lynn Calkins, head chemist of the State Hygienic Laboratory in Des Moines, relating to a breath test taken and analyzed for the equivalent blood-alcohol concentration.

Aldridge testified he stopped defendant's automobile the night of December 15, 1970, after having followed it two and a half blocks. After some investigation at the scene the officer, suspecting defendant of intoxication, placed him under arrest for operating a motor vehicle while under the influence of an alcoholic beverage. Defendant was taken to the Indianola police station where Aldridge orally requested that defendant submit to a breath test. Aldridge personally administered the test.

It was brought out on cross-examination of Aldridge that he did not explain the Implied Consent Law (Uniform Chemical Test for Intoxication Act, chapter 321B, The Code) to defendant as he (Aldridge) had no authority to do so. He further testified his only prior experience with breath test equipment resulted from a one-day training session at the Highway Patrol Headquarters.

At that point defendant, in the absence of the jury, moved to strike Aldridge's testimony regarding the breath analysis test for the reason the officer was not authorized to administer the test under the Implied Consent Law and no written request was given pursuant to this statute. The court overruled defendant's motion stating:

"* * * This is a separate proceeding, a criminal case, and the evidence, the court thinks, should be admitted here of any chemical test which appears * * * to have been taken under reasonable, proper circumstances. * * *.

"If we were dealing with a matter of taking the license for a refusal to take it, that would be another matter and the court would feel, probably, the objection would be good at this point."

Lynn Calkins was permitted to testify over objection that the breath sample showed an alcoholic concentration of 0.233 percent.

The court's ruling on defendant's objections to testimony of these witnesses was the basis for his motions for mistrial and for directed verdict previously mentioned.

Concerning the legitimacy of the breath test as administered here, defendant

charges failure in two respects—Officer Aldridge was not empowered by statute to administer the test and no written request was issued pursuant to the statute.

Defendant contends the admission over his timely objection of evidence bearing on the breath test given by Aldridge was reversible error since it was taken in violation of three sections of chapter 321B. We set out the Code sections involved.

Definitions of the words "peace officer" as used in this chapter are set forth in section 321B.2:

"* * *

"1. Members of the highway patrol.

"2. Police officers under civil services as provided in chapter 365.

"3. Sheriffs.

"4. Regular deputy sheriffs who have had formal police training.

"5. Any other law enforcement officer who has satisfactorily completed an approved course relating to motor vehicle operators under the influence of alcoholic beverages at the Iowa law enforcement academy or a law enforcement training program approved by the department of public safety."

When the Regular Session of the Sixtieth General Assembly enacted the Uniform Chemical Test for Intoxication Act, it limited the meaning of peace officer to the first four specifications in section 321B.2, as given above. In 1970 the Second Session, Sixty-third General Assembly, chapter 1155, section 1, perhaps in response to questions arising in litigation, added a fifth specification extending the meaning to those officers completing appropriate training programs. This amendment applies here.

Section 321B.3, The Code, provides in part:

"Any person who operates a motor vehicle in this state upon a public highway, under such circumstances as to give reasonable grounds to believe the person to have been operating a motor vehicle while under the influence of an alcoholic beverage, shall be deemed to have given consent to the withdrawal from his body of specimens of his * * * breath, * * * and to a chemical test or tests thereof, for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out. The withdrawal * * * shall be administered at the *written request* of a *peace officer* * * * and only after the peace officer has placed such person under arrest for the offense of operating a motor vehicle while under the influence of an alcoholic beverage. * * *." (Emphasis supplied.)

The legislature specified in section 321B.4 persons authorized to take the various tests:

"Taking sample for test. Only a licensed physician, or a medical technologist or registered nurse designated by a licensed physician as his representative, acting at the written request of a peace officer may withdraw such body substances for the purpose of determining the alcoholic content of the person's blood. However, any peace officer, using devices and methods approved by the commissioner of public safety, may take a specimen of a person's breath or urine for the purpose of determining the alcoholic content of the person's blood. * * *."

The third sentence from the quoted portion of this section was inserted by amendment in the First Session of the Sixty-third General Assembly, chapter 205, section 14, and is in effect here.

Aldridge's testimony demonstrates his qualifications fall short of the legislature's standards set forth in the Code for taking specimens of breath or urine. He does not qualify under the civil service provision and he has not received adequate supplementary training.

As suggested by the trial court if the present proceeding were an administrative hearing to revoke defendant's driving privileges, probably the objection Aldridge did not qualify as a peace officer under section 321B.2 to take the breath specimen under section 321B.4 would have been good. It is obvious the trial court's adverse ruling on defendant's objection was based on the fact this criminal prosecution was an independent proceeding. In Severson v. Sueppel, 260 Iowa 1169, 1176, 152 N.W.2d 281, 285–286, this court said:

"Proceedings under the Implied Consent Law, chapter 321B, Code 1966, are administrative not a criminal prosecution for operating a motor vehicle under Code section 321.281. The same motor vehicle operation may give rise to two separate and distinct proceedings, one a civil and administrative licensing procedure, the other a criminal action. * * * [citing authorities].

"Each action proceeds independently of the other. The outcome of one action is of no consequence to the other. Acquittal of the criminal charge of operating a motor vehicle while intoxicated * * * [does] not preclude defendant from revoking plaintiff's driver's license. * * * [citing authorities]."

Undoubtedly, it was in light of this pronouncement the trial court expressed its opinion that where it is shown defendant consented to the test and took it, the test is admissible in an independent criminal proceeding even though the officer taking the test did not possess the qualifications required by the Implied Consent Law for taking breath or urine specimens for analysis in determining the alcoholic content of an individual's blood.

It is not disputed defendant's objection sufficiently alerted the trial court to the fact there was an issue of law and gave notice of the terms of the issue. It called to the court's attention the element of inadmissibility or incompetency involved.

Lessenhop v. Norton, 261 Iowa 44, 53, 153 N.W.2d 107, 112.

The court's ruling thus points out the crucial issues in the matter before the court. That is, whether Aldridge's lack of qualification to take the test under chapter 321B affects admissibility of evidence bearing thereon in the present proceeding and what effect, if any, does defendant's consent to take the test have on the question of admissibility.

■ The legislature has seen fit to adopt certain qualifications required of those authorized to withdraw blood specimens pursuant to a written request of a peace officer, section 321B.4, and for the withdrawal of other body substance by artificial means. Janson v. Fulton, 162 N.W.2d 438, 443 (Iowa 1968). It has also directed that only those designated as peace officers in section 321B.2 may take breath or urine specimens. Section 321B.4.

We find that the legislative intent in adopting such standards was to insure, so far as seems humanly possible, accuracy of the various sobriety tests. This seems particularly true in view of the amendments to sections 321B.2 and 321B.4 to which reference has been made, supra. It cannot be doubted accuracy is vital to the reliability of evidence relating to such tests whether the evidence is being offered in an administrative hearing or in independent civil or criminal proceedings.

Although this court has said a criminal prosecution is independent of any administrative proceedings provided for in chapter 321B, a principle we still adhere to, attention is called to the fact provision is made in chapter 321B for admissibility of evidence concerning such tests in other independent proceedings.

"321B.10. Evidence in any action. Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while operating a motor vehicle upon a public highway of this state while

under the influence of an alcoholic beverage, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his blood, breath, saliva or urine is admissible."

It would be illogical for this court to say that the legislature intended certain precautions in the way of specific qualifications for those taking various sobriety tests are necessary to help insure accuracy of the tests where an administrative hearing is involved but that such precautions are not essential to the admissibility of evidence bearing on such tests in criminal or civil proceedings.

State v. Charlson, 261 Iowa 497, 154 N. W.2d 829, does not reach the point involved in the present case. In the cited case defendant orally requested that a specimen of his blood be taken. He consented to the procedure. Complaint was made that the syringe used by the nurse in withdrawing the specimen was not "new, originally factory wrapped, [or] disposable." The syringe used was described in detail by the registered nurse designated by a licensed physician to withdraw the specimen. We held the syringe used substantially complied with the provision of section 321B.4 which requires only "new, originally factory wrapped, disposable syringes and needles * * * be used for drawing blood. * * *." In affirming, this court said that the evidence of the test fairly falls within the terms of "any other competent evidence" to which section 321B.12 refers. We set out this section:

"Other evidence. The provisions of this chapter shall not be construed as limiting the introduction of any other competent evidence bearing on the question of whether the person was under the influence of an alcoholic beverage."

It is significant no complaint was made in the Charlson case that the person withdrawing the blood specimen was not qualified to do so. The question presented by the factual situation in the case before the

court was not considered in the Charlson case.

We hold evidence of a sobriety test having rational probative value and not otherwise subject to exclusion by some specific rule or principle of law when challenged by timely and proper objection, must be shown to have been taken by a person authorized by chapter 321B, The Code, in order to be competent for admissibility in either an administrative hearing or in civil or criminal proceedings.

III. There remains to be considered defendant's consent as bearing on admissibility of the sobriety test since the trial court, at least to some extent, justified admission of the test on the basis of such consent.

In this connection attention is directed to the fact defendant consented to the test being taken by Aldridge who was not a "duly authorized person." In Lessenhop v. Norton, 261 Iowa at 51, 153 N.W.2d at 111, this court said: "Before any result of a blood test analysis can be admitted in any civil or criminal case, the party seeking to introduce such evidence must first lay a proper foundation for its admission. Unless waived, this foundation must show that the specimen was taken by a duly authorized person * * * [citing authorities]."

This brings before us the question whether defendant's consent for Aldridge to take the test constitutes a waiver of this specified foundation requirement.

The State argues in support of the court's ruling that the analogy to the consent necessary for a warrantless search of a person's premises is in point and a driver may waive his right to have the statutory procedure followed for taking sobriety tests.

There can be no serious doubt a statutory right may be effectively waived. However, such analogy does not help the State here since it must be shown that such waiver was voluntary, free from du-

ress and intelligently given and not merely a submission to authority. See State v. Baych, 169 N.W.2d 578, 583 (Iowa 1969); State v. Smith, 178 N.W.2d 329, 333 (Iowa 1970); Gilliland v. Commonwealth, 224 Ky. 453, 6 S.W.2d 467, 469; Channel v. United States, 285 F.2d 217, 219–220 (9 Cir.); United States v. Elliott (D.Mass.), 210 F.Supp. 357, 360, and authorities cited in these opinions.

■ These authorities support the principle that where the prosecution relies on consent to justify a taking of a body specimen for analysis for blood-alcohol concentration by one other than a person authorized by chapter 321B, the prosecution must establish that consent was voluntarily, freely and intelligently given with full realization and comprehension of the meaning of the consent.

■ We find no evidence in the record before us which would warrant holding defendant's consent constituted a waiver of his right to have the breath test taken only by an authorized person when it is examined in light of this pronouncement.

In view of our determination that evidence of the sobriety test was not admissible, we do not reach defendant's remaining contention.

The case is therefore

Reversed.

All Justices concur, except UHLENHOPP, J., who dissents and HARRIS, J., who takes no part.

UHLENHOPP, Justice (dissenting from divisions II and III and result).

Chemical tests for intoxication involve two distinct situations: those in which the implied consent law is used to obtain a test, and those in which that law is not used. The present case is of the latter kind.

With the advent of the automobile and the safety problem created by the intoxicated driver, chemical tests for intoxication came to be widely used by law enforcement officers. The results of such tests, like other scientific tests, were universally held competent evidence and cogent proof when a proper foundation as to accuracy was laid. 29 Am.Jur.2d Evidence § 830 at 920–923; 22A C.J.S. Criminal Law § 645(3) at 528–529. Such tests were approved by court decision in Iowa on numerous occasions and became an important tool in law enforcement. State v. Morkrid, 286 N.W. 412 (Iowa); State v. Haner, 231 Iowa 348, 1 N.W.2d 91; State v. Werling, 234 Iowa 1109, 13 N.W.2d 318; State v. Koenig, 240 Iowa 592, 36 N.W.2d 765; State v. Slater, 242 Iowa 958, 48 N.W.2d 877; State v. Kindschuh, 248 Iowa 440, 80 N.W.2d 750; State v. Sampson, 248 Iowa 458, 79 N.W.2d 210.

Two problems, however, existed. One problem, or burden, was the necessity of scientific proof in every case of the amount of alcohol in the blood or other body substance which will produce intoxication. See State v. Fox, 248 Iowa 1394, 85 N.W.2d 608. Reference to that problem will be made later. The other and major problem was constitutional. A number of courts forbade the introduction of the results of such tests unless the motorist voluntarily submitted to the test. People v. Kraft, 3 Cal.App.3d 890, 84 Cal.Rptr. 280; Compton v. People, 166 Colo. 419, 444 P.2d 263; Washburn v. Commonwealth, 433 S. W.2d 859 (Ky.); Turvey v. State, 95 Okl. Cr. 418, 247 P.2d 304. This was apparently the rule in Iowa. State v. Weltha, 228 Iowa 519, 292 N.W. 148. Dean Ladd's views to the contrary were not adopted in Weltha, although they were subsequently vindicated in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. See Ladd and Gibson, The Medico-Legal Aspects of the Blood Test to Determine Intoxication, 24 Iowa L.Rev. 191, 225–232.

Because of the voluntariness requirement, tests could not be obtained or used in

a substantial number of cases. Schmerber had not yet been decided, and ways were sought to induce more motorists to give a body substance.

The rule was and is that the use of the highways by a motorist is a privilege and not a vested right. Doyle v. Kahl, 242 Iowa 153, 46 N.W.2d 52. Hence, a statute was enacted in Iowa (and in numerous other states) that a person who refuses a test loses his privilege to drive—the fiction was employed that obtaining a driver's license constitutes "implied consent" to a test. 60 G.A. ch. 114, §§ 37–50. The implied consent statute, though it involves a degree of compulsion to consent to a test, was held constitutional. State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518. See Annot., 25 A.L.R.2d 1407, 1413. The statute contained and still contains a number of procedures relating to requesting and taking tests, such as a request in writing. Code, 1971, §§ 321B.3, 321B.4.

Does the implied consent statute dealing with the reluctant motorist abolish the standing rule that voluntary chemical tests not under the statute are competent evidence? The trial court in the instant case thought not, and its ruling seems right. The implied consent law does not contain a word or hint that it abolishes the general rule of admissibility in the voluntary test case. The "declaration of policy" in the statute states, "The general assembly hereby determines and declares that the provisions of this chapter are necessary in order to control alcoholic beverages and *aid* the enforcement of laws prohibiting operation of a motor vehicle while under the influence of an alcoholic beverage." (Italics added.) Code, 1971, § 321B.1.

Moreover, § 321B.12 of the statute provides, "The provisions of this chapter shall not be construed as limiting the introduction of any other competent evidence bearing on the question of whether the person was under the influence of an alcoholic beverage." This court construed § 321B.12 in State v. Charlson, 261 Iowa 497, 154 N.

W.2d 829. There the test was voluntary, but the written request prescribed by the implied consent statute was not made. The defendant sought to suppress evidence of the test for this non-compliance with the statute. This court held the test admissible, quoted § 321B.12, and said (261 Iowa at 505, 154 N.W.2d at 833):

*The evidence sought to be suppressed here fairly falls within the term "any other competent evidence", etc. to which 321B.12 refers.* Further, this section expresses a legislative intent the chapter is not to be construed as limiting the introduction of competent evidence bearing on whether an accused was intoxicated. (Italics added.)

See also reference to tests at the request or with the consent of the accused in State v. Boner, 186 N.W.2d 161, 164 (Iowa).

Of course, if an implied consent statute provides that results of tests shall *only* be admissible if the procedures in that statute are followed, or if the statute provides such procedures *must* be followed in obtaining tests, then those procedures must be employed or tests cannot be obtained or used. Statutes of that sort are involved in Jones v. Forrest City, 239 Ark. 211, 388 S. W.2d 386; Otte v. State, 172 Neb. 110, 108 N.W.2d 737; and State v. Hood, 184 S.E. 2d 334 (W.Va.). Our statute contains no provisions of that nature but, on the contrary, contains provisions looking in the other direction, and falls more within the rationale of People v. Ward, 307 N.Y. 73, 120 N.E.2d 211 (when voluntary test, procedural requirements of license revocation statute are not involved); Bowman v. Commonwealth, 201 Va. 656, 112 S.E.2d 887 (where test on defendant's request, results admissible although statutory procedures not employed); State v. Groulx, 109 N.H. 281, 249 A.2d 690 (if test shown accurate, results admissible although statutory provisions not employed); State v. Slater, 109 N.H. 279, 249 A.2d 692 (same). In addition, statutes of the kind involved in Jones, Otte, and Hood frequently are

comprehensive in nature and themselves specify the percentage of alcohol in the body substance which presumptively causes intoxication. The Iowa implied consent statute does not do so. Iowa does, however, have a statute creating a presumption of intoxication when a specified percentage of alcohol is shown. Code, 1971, § 321.281. But that statute was enacted independently and at a different time and does not amend the implied consent law. 63 G.A. ch. 205, § 1. Thus, our statutory presumption is not made to depend upon the test's being obtained under the implied consent law. It would seem that if all tests must be obtained under the implied consent law, the presumption would be in that law, as, for example, it is in the West Virginia law. State v. Hood, 184 S.E.2d 334, 337 (W. Va.).

Obviously, if the State has proceeded under the implied consent statute, then the State must show it has substantially followed the provisions of that statute. Thus, if the State is seeking to revoke a motorist's license under the implied consent statute for refusal to take a test which was demanded pursuant to that statute, the State must show it substantially complied with that statute. Or, if the State, in seeking to convict a motorist for driving while intoxicated, offers evidence of a test which was obtained by making a written request for it under the implied consent statute on pain of license revocation for refusal, then, too, the State must show its substantial compliance with the procedures in that statute. But when, as in the present case, the officer does not proceed under the implied consent law, knows he cannot invoke that law, and does not mention, threaten with, or make written request under that law, then the implied consent law is not involved; and if the motorist voluntarily gives or offers a body substance, the test results should be admitted in evidence under the standing rule that such tests constitute competent proof.

The motorist's subsequent testimony that he thought he had to take a test—although the officer did not so say or infer—does not prevent the test from being voluntary. That was held in State v. Werling, 234 Iowa 1109, 1111, 13 N.W.2d 318, 319–320 ("Nobody told me that I had to take one, I thought you did but they didn't tell me that I had to. I thought it was the law."—test results admissible).

Safety on the highways is too important and the problem of the intoxicated driver is too critical to warrant a holding that the standing rule of admissibility in the voluntary test case is abolished by implication, especially since the indications in the implied consent statute are that such statute was intended to increase rather than diminish law enforcement in this area. The judgment of the trial court should be affirmed.