STATE of Iowa, Appellee,

·v.

Donald Eugene SMITH, Appellant.

No. 61703.

Supreme Court of Iowa.

Dec. 20, 1978.

Michael J. Streit and Richard D. Morr, of Morr & Shelton, P. C., Chariton, for appellant.

Richard C. Turner, Atty. Gen., Ann Fitzgibbons, Asst. Atty. Gen., and Robert L. Fulton, Decatur County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, ALLBEE and McGIVERIN, JJ.

ALLBEE, Justice.

Defendant, Donald Eugene Smith, stands convicted of the offense of operating a motor vehicle while under the influence of alcohol, a violation of § 321.281, The Code. He now appeals from certain evidentiary rulings rendered during his jury trial. We find merit in his contentions and reverse.

In the early morning of November 3, 1977 defendant attracted the attention of Trooper Ronald R. Thomas of the Iowa Highway Patrol by forcing Thomas onto the shoulder when their vehicles passed on highway 69 north of Leon. Thomas's suspicions having been thus aroused, he pursued defendant, stopped him and placed him under arrest. Defendant was then taken to the office of the Decatur County Sheriff, where he consented to a urine test.

Trooper Thomas used a clean plastic cup to collect the urine specimen from defendant. He then transferred the specimen from the cup to a glass tube. This controversy centers upon that tube. The tube was included as part of a blood test kit made available by the Highway Patrol to its troopers. It contained a whitish powder which Thomas testified was an anticoagulant for blood. Thomas also testified that his use of the blood test kit in this manner was pursuant to a directive issued by a superior.

After transferring the specimen to the tube, Thomas mailed the tube to the crimi-

nalistics laboratory of the Iowa Bureau of Criminal Investigation in Des Moines. Thomas subsequently received a report from that laboratory indicating that the package had been received on the morning of November 4, that the urine sample labeled with defendant's name had been tested and that it contained alcohol corresponding to a blood alcohol level of 0.168% by weight. Defendant made no request under § 749A.2, The Code (now § 691.2, Code Supp. 1977), for the laboratory technician who conducted the analysis to testify.

Defendant objected to admission of the laboratory report for the reason that the foundation for admission of the report was inadequate in two respects. He first complained that there was no showing that the white powder in the tube would not affect the urine test. He also insisted that there was an insufficient showing of the chain of custody of the specimen.

▌ The burden was on the State to show facts which make the results of the urine test admissible. *State v. Richards*, 229 N.W.2d 229, 233 (Iowa 1975); *State v. Dille*, 258 N.W.2d 565, 568 (Minn.1977). For the test results to have any relevancy, it should be shown that the specimen which was tested was in the same condition as when it was taken from defendant. *Novak v. District of Columbia*, 49 A.2d 88, 90 (D.C. Mun.App.1946). Any differences in condition, and their effects, should be explained to the jury. *Cf. State v. Wycoff*, 255 N.W.2d 116, 118–9 (Iowa 1977) (explaining general standard for admissibility of tests). *See generally* E. Cleary, McCormick on Evidence § 212 at 527–8 (2d ed. 1972).

The question of whether *blood* samples, or tests conducted on them, are admissible despite the presence of anticoagulants has been considered by several courts, including this one. *See, e. g., State v. Kindschuh*, 248 Iowa 440, 80 N.W.2d 750 (1957); *State v. Rines*, 269 A.2d 9, 16 (Me.1970); *State v. Dille*, 258 N.W.2d 565, 568 (Minn.1977); *State v. Fox*, 177 Neb. 238, 242–4, 128 N.W.2d 576, 582 (1964); *Rimpley v. State*, 169 Neb. 171, 179, 98 N.W.2d 868, 873–4 (1959); *State v. Erdman*, 64 Wash.2d 286,

288, 391 P.2d 518, 519 (1964). The test was held to be admissible in each of these cases except *State v. Rines*. However, in every case allowing admission, except *Dille*, there was testimony by an individual with expertise in the area that gave the jury a basis for judging the effects of the anticoagulant on the test results. *See Kindschuh*, 248 Iowa at 442, 80 N.W.2d at 752; *Fox*, 177 Neb. at 242–4, 128 N.W.2d at 578–9; *Rimpley*, 169 Neb. at 179, 98 N.W.2d at 873–4; *Erdman*, 64 Wash.2d at 287–8, 391 P.2d at 519–20. The dissent in *Rines*, 269 A.2d at 17, which would have allowed admission, proposed to do so on the basis of expert testimony and judicial notice of a Pharmacopoeia and Formulary.

Finally, the one case which made no reference to experts, *State v. Dille*, placed reliance upon the fact that the blood container and its contents were furnished as a blood-testing kit by the Bureau of Criminal Apprehension. This "provided a sufficient indicium of reliability to establish the prima facie admissibility of the test results." 258 N.W.2d at 568.

▌ The situation with which we are presented is substantially different from those in the cases cited. In the trial of this cause, there was no indication of what effect the white powder in the vacuum tube might have on urine. And, assuming that we were inclined to follow the rather loose approach suggested by *State v. Dille*, there is nothing in this case which provides the same indicium of reliability for testing urine. The use of the blood test kit was, according to Trooper Thomas, at the direction of a superior within the Highway Patrol. But the regularity of this procedure is not shown. Nor is there any indication that anyone in the hierarchy of the Highway Patrol is qualified to make judgments as to the chemical properties of the powder in the vacuum tube and its effect on the urine test. This court has recognized that the condition of a container which might affect reliability of the chemical analysis of its contents would afford a ground for objection to admission of expert testimony based on the analysis. *Janson v.*

*Fulton*, 162 N.W.2d 438, 440 (Iowa 1968). Therefore, admission of the results of the BCI lab's analysis was an abuse of discretion. *Cf. Barnes v. Smith*, 305 F.2d 226, 231–2 (10th Cir. 1962) (not an abuse of discretion to reject result of blood test where blood was withdrawn under circumstances clearly indicating the probability of lack of chemical purity). This requires reversal.

We must, however, determine defendant's second issue in order to offer guidance for retrial. It is here that he challenges the sufficiency of the chain of custody of the urine specimen. We are confronted with the question of what effect two statutes and an administrative rule have on the usual chain of custody requirements.

Defendant contends that the chain of custody fails after Trooper Thomas placed the specimen in the mail. Thomas testified that he placed two stamps on the package and mailed it to Iowa Bureau of Criminal Investigation, Criminalistics Laboratory, Department of Public Safety, East 7th and Court, Second Floor, Des Moines, Iowa, 50319. The address stamped on State's exhibit 4, a blood test kit similar to that used by Thomas in this case, is the same as that recited by the trooper. No other markings were on that item prior to its being tagged as an exhibit. The lab report, State's exhibit 3, shows that a package was received by mail from Trooper Thomas on November 4. It indicates that the package was received by an evidence clerk, Linda Wiese, but examined by Howard A. Birnbaum, criminalist.

A challenge to the foundation for admission of results of a urine test was considered in *State v. Fox*, 248 Iowa 1394, 1398, 85 N.W.2d 608, 611 (1957). There the chain, which was quite detailed and without apparent gaps, was found to be adequate. The legislature has enacted two statutes since *Fox*, however, which have some bearing on this question. The first is § 749A.2, The Code (now § 691.2, Code Supp. 1977), which is discussed and quoted in full in *State v. Dykers*, 239 N.W.2d 855, 857 (Iowa 1976).

Section 749A.2 accomplishes two things. It creates a presumption that the technician is an expert, *see State v. Kramer*, 231 N.W.2d 874, 881 (Iowa 1975), and provides an exception to the hearsay rule so that the report may be admitted without the technician being present. *See State v. Dykers, supra*, 239 N.W.2d at 857. It has no bearing on the requirement that the item analyzed be identified as relevant.

The second statute, § 749A.3 (now § 691.3) empowers the commissioner of public safety to prescribe rules for the handling of items received by the criminalistics laboratory. It then provides that "[a]n item handled in conformity with the rules shall be presumed to be admissible in evidence as to the period in transit to and from and while in custody of the laboratory without further foundation."

The identification requirement is affected only by § 749A.3. Under that statute, if the urine specimen had been handled in conformity with the commissioner's rules the test would be admissible. This is because the State had accounted for custody of the specimen from the time that it was taken from defendant until the time it was put into transit, that is, deposited in the mail. *Cf. Orr v. Econo-Car of Indianapolis, Inc.*, 276 N.E.2d 524, 530 (Ind.Ct.App.1971) (evidence that during four day period the specimens were in the custody of the United States Mail was sufficient to complete the chain of custody in a civil case).

The question which remains is whether the specimen in question was handled in conformity with the commissioner's rules. The rule involved is 680 Iowa Administrative Code § 4.5(3), which provides in part that "[e]vidence submitted to the laboratory . . . may be labeled as to the laboratory section or type of examination required, (e. g. Attention: Firearms section), so that the person who opens the package may examine the contents and *may be the only person from the laboratory in the chain of custody and required to testify*." (Emphasis added.) Section 4.5(3) then provides a list of lab sections and their capabilities, and specifies mail label codes. The relevant part of that list is this entry:

a. Blood alcohol section analysis (Attention: BA section)
(1) Breath alcohol.
(2) Blood alcohol.
(3) Urine alcohol.

 An examination of Trooper Thomas's testimony and of the label on State's exhibit 4 reveals that no section code was included on the mailing label. Therefore, the commissioner's rule was not complied with and the State was not entitled to the presumption created by § 749A.3. This was a violation of the very rule intended to avoid the creation of a chain of custody problem and to insure the integrity of the specimen handling process within the laboratory. Compliance with the rule could have been accomplished, and demonstrated, by inclusion of the proper section code in the address and an affirmation by the testing technician, in his report, that he received the package containing the specimen intact, sealed and in the condition in which it was apparently mailed or delivered directly to the laboratory, in addition to the recital, actually included in the report before us, that the specimen itself was received in a sealed condition.

■ The identification requirements are easily summarized. In order to properly identify a specimen which is the subject of BCI lab analysis, the proponent of the evidence must make a two part showing:

(1) that the proper specimen was either delivered directly to the laboratory or deposited in the mail, properly addressed to the laboratory (including the proper section code); and

(2) that the commissioner's rules regarding the handling of that specimen after such delivery or receipt by mail were met. This part may be shown by reliance on the technician's report itself.

If the second requirement cannot be met, then the State must either establish a complete chain of custody from the time of acquisition of the specimen to the time it is delivered to the laboratory technician or establish by other means that the specimen or article actually tested was the relevant article and was in a condition at the time of the test which was substantially similar to its condition at the critical time.

Because the presence of the unexplained white powder in the urine specimen requires reversal, we need not determine whether admission of the test over the chain of custody objection was an abuse of discretion. Instead, we merely seek to eliminate future problems by setting guidelines assuring a sufficient foundation.

REVERSED.